UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KARAM PRASAD, LLC d/b/a/ BISHOP
OF SEVENTH,

                                   Plaintiff,

        - *against* -

CACHE, INC.,

                                   Defendant.

Case No. 07 CV 5785 (PAC) (JCF)

---

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION
## (ELECTRONICALLY FILED)

**MILLEN, WHITE, ZELANO
& BRANIGAN, P.C.**
Attorneys for Plaintiff
        Michael S. Culver
        (admitted *pro hac vice*)
        culver@mwzb.com
2200 Clarendon Blvd., Ste. 1400
Arlington, VA 22201-3360
(703) 243-6333 tel.
(703) 243-6410 fax.

**EDWARD F. WESTFIELD, P.C.**
Attorneys for Plaintiff
        Edward F. Westfield Jr.
        (EW1625)
        efwjr@efwpc.com
274 Madison Avenue, Suite 1601
New York, NY 10016-0701
(212) 532-6625 tel
(212) 532-6627 fax

## Table of Contents

Table of Authorities ................................................................................................ ii

I. Introduction ...................................................................................................... 2

II. Statement Of Facts .......................................................................................... 2

III. Preface On Terminology ................................................................................. 6

IV. Argument: A Likelihood Of Confusion, And Thus Irreparable Harm, Is Inevitable     7

    A. Standards For A Preliminary Injunction........................................................ 7

    B. Designer Jeans And Defendant's Copying .................................................... 7

    C. New York Common Law: No Secondary Meaning Required ......................... 9

    D. Likelihood-Of-Confusion Factors Favor Relief .......................................... 11

        1. Strength Of Plaintiff's Trademarks And Trade Dress ....................... 12

        2. Similarity Of The Marks And Trade Dress ...................................... 13

        3. Proximity Of The Products .............................................................. 14

        4. Bridging The Gap ........................................................................... 15

        5. Junior User's Good Or Bad Faith .................................................... 16

        6. Quality Of The Junior User's Product ............................................. 16

        7. Actual Confusion ........................................................................... 17

        8. Sophistication Of Purchasers .......................................................... 17

    E. Balancing The Factors Favors Relief ........................................................... 18

    F. Plaintiff's Marks And Trade Dress Are Non-functional ............................... 19

V. Conclusion ...................................................................................................... 20

## Table of Authorities

### Cases

*Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4 (2d Cir. 1976) ............................ 12

*Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.,* 42 N.Y.2d 538,
369 N.E.2d 1162, 399 N.Y.S.2d 628 (1977) ................................................................. 9

*Boone v. Menifee,* 387 F.Supp.2d 338 (S.D.N.Y. 2005) ................................................ 8

*Centaur Communications, Ltd. v. A/S/M Communications, Inc.,*
830 F.2d 1217 (2d Cir. 1987) ......................................................................... *passim*

*Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162 (2d Cir. 1991)          8-10

*Dallas Cowboy Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,*
604 F.2d 200 (2d Cir. 1979) ......................................................................... 11

*Diamond Expansion Bolt Co. v. U.S. Expansion Bolt Co.,* 177 A.D. 554,
164 N.Y.S. 433 (1st Dept. 1917) ................................................................ 19

*In re Dimtri's Inc.,* 9 USPQ2d 1666 (TTAB 1988) .................................................. 8

*Forschner Group, Inc. v. Arrow Trading Co., Inc.,* 124 F.3d 402 (2d Cir. 1997) ...................... 10

*Fruit-Ices Corp. v. CoolBrands Int'l Inc.,* 335 F.Supp.2d 412 (S.D.N.Y. 2004) ........................ 19

*Gemvetto Jewelry Co. v. Jeff Cooper, Inc.,* 615 F.Supp. 1052 (S.D.N.Y. 1985),
*vacated on other grounds,* 800 F.2d 256 (Fed. Cir. 1986) ............................................... 19

*Grotrian, Helfferich, Schulz, Th. Steinweg Nachf v. Steinway & Sons,*
523 F.2d 1331 (2d Cir. 1975) ......................................................................... 17

*Harlequin Enterprises Limited v. Gulf & Western Corp.,*
644 F.2d 946 (2d Cir. 1981) ......................................................................... 9-10

*Hasbro, Inc. v. Lanard Toys, Ltd.,* 858 F.2d 70 (2d Cir. 1988) ....................................7, 14-15, 17

*Hermès International v. Lederer de Paris Fifth Avenue, Inc.,*
219 F.3d 104 (2d Cir. 2000) ......................................................................... 14

*John Forsythe Co. v. Forsythe Shoe Corp.,* 234 A.D. 355, 254 N.Y.S. 584 (1st Dept. 1932),
*aff'd as modified on other grounds,* 259 N.Y. 248, 181 N.E. 467 (1932) .......................... 19

*Jordache Enterprises, Inc. v. Levi Strauss & Co.*, 841 F.Supp. 506 (S.D.N.Y. 1993) ...............14

*KOS Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004) ......................................8

*Lacoste Alligator, S.A. v. Blumstein's Men's Wear*, 569 F.Supp. 491 (D.S.C. 1983) ..................8

*Laureyssens v. Idea Group, Inc.*, 964 F2d 131 (2d Cir. 1992) ........................................................9

*LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71 (2d Cir. 1985) ...............................................10, 14

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867 (2d Cir. 1986) *passim*

*Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*,
426 F.3d 532 (2d Cir. 2005) ...................................................................................................7, 13

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
454 F.3d 108 (2d Cir. 2006) ...................................................................................................7, 13

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254 (2d Cir. 1987) ................................14

*Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44 (2d Cir. 1978)
(per curiam), *cert. denied*, 439 U.S. 1116 (1979) ........................................................................11

*Paddington Corp. v. Attiki Importers & Distributors, Inc.*,
996 F.2d 577 (2d Cir. 1993) ...............................................................................................11, 14-16

*Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950 (2d Cir. 1980),
*cert. denied*, 459 U.S. 832 (1982) .....................................................................................9-10, 18

*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir.),
*cert. denied*, 368 U.S. 820 (1961) ..............................................................................................10

*Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145 (4th Cir. 1987)...........................................8

*RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058 (2d Cir. 1980) .........................................10

*Stormy Clime, Ltd. v. ProGroup, Inc.*, 809 F.2d 971 (2d Cir. 1987) ...........................................19

*20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*, 815 F.2d 8 (2d Cir. 1987) ...........................10

*Wang v. Pataki*, 396 F.Supp.2d 446 (S.D.N.Y. 2005) .................................................................8

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001) .................................................19

## Statutes

15 U.S.C. § 1127                                                           6

## Other Authority

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition (4th Ed. 2007) .............6

Restatement Third, Unfair Competition ....................................................................................6, 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KARAM PRASAD, LLC d/b/a/ BISHOP
OF SEVENTH,

                          Plaintiff,

          - *against* -

CACHE, INC.,

                          Defendant.

---

Case No. 07 CV 5785 (PAC) (JCF)

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, Karam Prasad, LLC d/b/a Bishop of Seventh ("Plaintiff"), submits this memorandum in support of its motion for a preliminary injunction to enjoin Defendant Cache, Inc. ("Defendant") from infringing Plaintiff's trademarks and trade dress. The relevant facts are set forth in the Declaration of Chachi Prasad, dated July 17, 2007 ("Prasad Decl."), and the Declaration of Michael S. Culver, Esq., dated July 17, 2007 ("Culver Decl.").

## I.    Introduction

Defendant markets blue jeans that copy the marks and trade dress of Plaintiff's blue jeans, and thus should be enjoined based on the facts and law discussed herein. While the Amended Complaint in this action alleges various federal and state violations, this motion is based solely on violations of the New York State common law of unfair competition.

This is a case of slavish copying by Defendant. Even a cursory view of the product photographs submitted herewith demonstrate Defendant's blatant and wholesale misappropriation of Plaintiff's intellectual property. This is not a case calling for nuances and fine points in determining the similarities at hand. A likelihood of confusion for the public is thus also clearly at hand, and Defendant should be enjoined before its infringement inflicts further irreparable harm on Plaintiff.

## II.    Statement Of Facts

Plaintiff's principals—Karam Kim and Chachi Prasad—are New York fashion designers having previous experience with Calvin Klein, Oscar De la Renta and other well-known fashion houses. Prasad Decl. ¶ 2. Plaintiff's designer clothing includes premium jeans sold thorough fashionable department stores and high-end boutiques such as Nordstrom and Wynn Las Vegas. *Id.* Plaintiff's jeans are sold at retail at a price range of $200 to $340. *Id.*

After carefully researching brands and logos in the denim market, Plaintiff created an original design, shown below within the outline of a back pocket, as a trademark to identify and distinguish its line of designer jeans:



Prasad Decl. ¶ 3.

The above design was unveiled at the Coterie fashion show in New York City in September 2004 at which time sales were made of jeans identified by this trademark. Prasad Decl. ¶ 4. This mark is considered Plaintiff's signature and has been used to identify most of the models in Plaintiff's lines of jeans. *Id.* A photograph showing Plaintiff's trademark, as appearing on both back pockets of its jeans, is submitted herewith. Exhibit B, ¶ 3 Culver Decl. (Hereinafter the "signature" or "pocket" mark.)

Plaintiff, working with the Swarovski company, which is known for crystal jewelry and décor objects, developed small jewel-like settings in the form of crystals to be inlaid in Plaintiff's jeans. Prasad Decl. ¶ 5. These crystals are inlaid in the welting of a besom pocket,[1] above the openings in each of the back pockets of the jeans, and in the inside seams of both legs. *Id.*

---

[1] A besom pocket is "a flapless pocket trimmed with welting or reinforced stitching." *See* dictionary definition at Exhibit A, ¶ 2 Culver Decl.

3

Plaintiff is not aware of any other designer jeans using a besom pocket with inlaid crystals. *Id.*

The foregoing design, called the "Crystal Jean", was unveiled in April 2005 and sold at that time for the Fall season.[2] Prasad Decl. ¶ 6. The above-mentioned photograph showing the signature mark also shows the besom pocket of the crystal jean. Exhibit B, ¶ 3 Culver Decl. Plaintiff's crystal jeans are sold at retail at a price range of $310 to $340. Prasad Decl. ¶ 6. All of Plaintiff's premium jeans, including the crystal jean and those with the signature mark, are marketed to females. *Id.*

Defendant retails clothing through its website at http://www.cache.com/ and approximately two hundred sixty (260) stores nationwide. Exhibit C, ¶ 4 Culver Decl. Defendant's website advertises jeans and denim pants in non-sale prices ranging from $88 to $158. *Id.*, Exhibit D, ¶ 5. These products are marketed to females. *Id.* Exhibit C, ¶ 4 (*see* "about us" web page). Defendant's products include jeans called the Besom Pocket Stretch Jean ("Defendant's Besom Pocket jeans"). *Id.*, Exhibit E, ¶ 6. This product was advertised for eighty-eight dollars ($88) on Defendant's website. *Id.* This advertising was present on the website at least as late as July 10, 2007 (the date of printing the web page), but has since been removed.

Defendant's Besom Pocket jeans have a design stitched into both back pockets. A photograph of these jeans is submitted herewith. Exhibit F, ¶ 7 Culver Decl. These jeans also feature a besom pocket inlaid with small jewel-like settings of crystals and these crystals inlays are also repeated in the outer seams of both legs. Side-by-side product photographs of Plaintiff's crystal jeans and Defendant's Besom Pocket jeans, showing the back pockets and leg seams, are

---

[2] The Complaint inadvertently stated at paragraph 13 that use of the Crystal Jean began September 2004, the same date as for Plaintiff's signature pocket trademark. This error was corrected in the Amended Complaint. The pleadings correctly allege that Plaintiff's use of the crystal trade dress preceded any use by Defendant.

submitted herewith. Exhibits G and H, ¶¶ 8 and 9 Culver Decl. The side-by-side view of the

parties' products, Exhibit G, is shown below.



Plaintiff first heard of Defendant's Besom Pocket jeans on May 12, 2007, and thereafter

obtained a sample and contacted counsel. Prasad Decl. ¶ 7. Plaintiff's counsel notified counsel

for Defendant by letter dated May 22, 2007 that Defendant's jeans were an infringing product.

Exhibit I, ¶ 10 Culver Decl. Defendant did not respond to this letter. *Id.* Further notification was

provided by emails of June 1 and 4, 2007 by Plaintiff's counsel to Defendant's counsel. *Id.,*

Exhibit J, ¶ 11. Defendant did not respond to these emails. *Id.*

Plaintiff's jeans are U.S. made with high quality fabrics and workmanship. Prasad Decl. ¶

8. Plaintiff's preliminary examination of Defendant's Besom Pocket jeans reveals that the

product is made in Hong Kong with lesser quality fabrics and workmanship, although the quality

is consistent with a mass-produced article at its selling price. *Id.*

### III.    **Preface on Terminology**

This case involves both the Plaintiff's trademarks and trade dress. A trademark, as defined in the Lanham Act, "includes any word, name, symbol, or device, or any combination thereof" that identifies and distinguishes the source of the goods. 15 U.S.C. § 1127. Trade dress includes "[t]he design of elements that constitute the appearance or image of goods or services as presented to prospective purchasers, including the design of packaging, labels, containers, displays, décor, or the design of a product, a product feature, or a combination of product features ..." Restatement Third, Unfair Competition § 16. The two concepts, while different, are overlapping. "Today, many types of designations protectable as 'trade dress' are also registerable as 'trademarks'. ...Thus, the history of American law throughout much of the Twentieth Century is the gradual disappearance of distinctions between the law of 'trade dress' and that of 'trademarks." J. Thomas McCarthy, 1 McCarthy on Trademarks and Unfair Competition § 8.1 (4th Ed. 2007).

In this case, the symbol on the back pockets of Plaintiff's jeans is a trademark, and the inlaid crystal settings could likewise be deemed a trademark as a "device" that identifies Plaintiff. However, that device occurs on both the back pockets and the leg seams. Due to this spatial separation of the crystals, its overall effect has been called a trade dress here. Plaintiff's jeans emanate yet another trademark in a composite mark of the crystal settings inlaid in the besom pocket in close conjunction with the symbol on the back pockets. For some consumers, this composite mark would appear as an enhanced form of the pocket mark since that mark also acts to identify Plaintiff on jeans that do not contain the crystal design in the besom pocket.

**IV.  Argument: A Likelihood Of Confusion, And Thus Irreparable Harm, Is Inevitable**

### A.  Standards For A Preliminary Injunction

"To obtain a preliminary injunction, plaintiff must show irreparable harm absent injunctive relief, and either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in plaintiff's favor." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 113-14 (2d Cir. 2006). The standard requires "just a likelihood of success" and not a "strong" likelihood of success on the merits. *Id.* at 114. "In trademark disputes, 'a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm.'" *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005), (quoting *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir. 1988)).

### B.  Designer Jeans And Defendant's Copying

Plaintiff designs jeans. Designer jeans, in the past few years, have re-emerged as a hot trend. Wikipedia, for example, reports "[i]n the late 1980s, designer jeans lost popularity. In the early 2000's, they started coming back into fashion ..." Exhibit K ¶ 12 Culver Decl. "They [designer jeans] typically feature prominently visible designer names or logos on the back pockets and on the right front coin pocket." *Id.; see also* Exhibit L, *¶ 13* (news reports covering trend and back pocket logos). One fashion oriented website, for example, has catalogued various designs on back pockets for some designer jeans. *Id.,* Exhibit M, ¶ 14. The preface to this catalog states, "[w]ith the denim market saturated with more and more denim brands, the quest for

7

creating a standout back pocket is more important than ever. The back pocket serves not only as a focal point on denim bottoms, but also as a signal of superiority in the market."[3]

The emphasis on the back pocket of jeans as a placeholder for a trademark thus follows other apparel trends. The pocket or left breast area of a polo shirt, for example, is a well-known placeholder for branding. *See, e.g., Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145 (4th Cir. 1987) (infringement of polo player symbol); *Lacoste Alligator, S.A. v. Blumstein's Men's Wear*, 569 F.Supp. 491 (D.S.C. 1983) (infringement of IZOD alligator design). The placement of tags on premium handbags is also such a placeholder. *See Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 170 (2d Cir. 1991). "The manner in which a symbol or design is used is relevant to the likelihood that it will be perceived as an indication of source." Restatement, *supra*, § 13 comment d. "[T]he size, *location*, dominance and significance of the alleged mark as applied to the goods are all factors which figure prominently in the determination of whether it also serves as an indication of origin. *In re Dimtri's Inc.*, 9 USPQ2d 1666, 1667 (TTAB 1988) (emphasis added).

Defendant has copied Plaintiff's signature mark and crystal trade dress, and the composite mark of the two, as appearing on the back pockets. A comparison of the product photographs leaves no doubt of this fact. *See* Exhibit G, ¶ 8 Culver Decl. Defendant's imitation extended further to the use of crystals inlaid in the seams. *See id.* at Exhibit H. Defendant certainly had access to Plaintiff's product through any retail purchase, or Defendant could have obtained a sample through a showroom that carries Plaintiff's products for professional buyers of

---

[3] The court may take judicial notice of information on websites. *See Wang v. Pataki*, 396 F.Supp.2d 446, 458 n.2 (S.D.N.Y. 2005); *Boone v. Menifee*, 387 F.Supp.2d 338, 342 n.4 (S.D.N.Y. 2005). Additionally, in the preliminary injunction context, the evidentiary procedures are less formal and hearsay materials may be used. *See KOS Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004) (collecting cases).

retail outlets. Defendant's imitation was named in a way that calls attention to its use of the back pocket as a designer element: the Besom Pocket Stretch Jean.

## C.     New York Common Law: No Secondary Meaning Required

The law applicable to this motion is aptly summarized as follows:

> [U]nder New York's common law of unfair competition, a producer's trade dress is protected without proof of secondary meaning against practices imbued with an odor of bad faith. These practices include palming off, actual deception, appropriation of another's property, or deliberate copying. Therefore, true innovators, at least under New York law, have adequate means of recourse against free-riders.

*Laureyssens v. Idea Group, Inc.*, 964 F2d 131, 138-39 (2d Cir. 1992) (citations omitted). *See also Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 543 n.2, 369 N.E.2d 1162, 399 N.Y.S.2d 628 (1977) ("[C]ourts have begun to recognize that, in essence, an action for unfair competition turns not upon the acquisition of a secondary meaning, but upon whether the acts of a defendant can be characterized as unfair").

As to secondary meaning (which is not required), "[t]he trade dress of a product attains secondary meaning when the purchaser 'associates' its design with a single producer or source rather than simply with the product itself." *Coach Leatherware,* 933 F.2d at 168. "The inquiry into the existence of secondary meaning examines whether the proponent of a mark has acquired a protectible interest in it." *Centaur Communications, Ltd. v. A/S/M Communications, Inc.,* 830 F.2d 1217, 1221 (2d Cir. 1987). Thus, under New York common law, "[a]lthough secondary meaning usually is a prerequisite to trademark protection, New York law shields trade dress from deliberate copying even if it has not acquired a secondary meaning." *Harlequin Enterprises Limited v. Gulf & Western Corp.,* 644 F.2d 946, 950 (2d Cir. 1981), (citing *Perfect Fit Industries, Inc. v. Acme Quilting Co.,* 618 F.2d 950 (2d Cir. 1980), *cert. denied,* 459 U.S. 832 (1982)). In a case without deliberate copying, or other bad faith, it may be necessary to show that

the mark is distinctive (i.e., protectible). *See 20th Century Wear, Inc. v. Sanmark-Stardust, Inc.,* 815 F.2d 8, 11 (2d Cir. 1987). Otherwise, "[t]o prevail on the state law claim, [plaintiff] need only demonstrate a likelihood of confusion." *Coach Leatherware,* 933 F.2d at 169. "Unlike unfair competition claims brought under federal law, a showing of distinctiveness is not required to prove unfair competition under New York State common law." *Forschner Group, Inc. v. Arrow Trading Co., Inc.,* 124 F.3d 402, 408 (2d Cir. 1997).

Although secondary meaning is not required here, it is present by Defendant's copying. "A finding that [defendant] had intentionally copied [plaintiff's] mark could also be persuasive, if not conclusive, evidence of consumer recognition and good will." *20th Century Wear,* 815 F.2d at 19, (citing *LeSportsac, Inc. v. K Mart Corp.,* 754 F.2d 71, 78 (2d Cir. 1985); *RJR Foods, Inc. v. White Rock Corp.,* 603 F.2d 1058, 1060 (2d Cir. 1980); *Perfect Fit,* 618 F.2d at 954). *See also Centaur Communications,* 830 F.2d at 1224; *Harlequin Enterprises,* 644 F.2d at 950 ("Perhaps the most significant evidence of secondary meaning in this case, however, was the attempt by Simon & Schuster to capitalize on the Harlequin Presents cover when it introduced its own romance series").

Similarly, Defendant's copying creates a presumption of a likelihood of confusion. "Evidence of conscious imitation is pertinent because the law presumes that an intended similarity is likely to cause confusion." *Harlequin Enterprises,* 644 F.2d at 949.

> In assessing the likelihood of confusion to the public, an important factor is whether or not the second comer created the trade dress intentionally. If there was intentional copying the second comer will be presumed to have intended to create a confusing similarity and will be presumed to have succeeded. *Perfect Fit,* 618 F.2d at 954.

In addition to the foregoing presumption, a likelihood of confusion is also shown here, as discussed next, by analysis of the traditional *Polaroid* factors. *Polaroid Corp. v. Polarad Elecs.*

10

*Corp.*, 287 F.2d 492 (2d Cir.), *cert. denied,* 368 U.S. 820 (1961). The *Polaroid* factors are equally applicable to trademark and trade dress cases. *Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 584 (2d Cir. 1993).

**D.     Likelihood-Of-Confusion Factors Favor Relief**

To establish a likelihood of confusion, "a plaintiff must show a 'likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or simply confused, as to the source of the goods in question'" *Centaur Communications,* 830 F.2d at 1225 (quoting *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978) (per curiam), *cert. denied,* 439 U.S. 1116 (1979)). The *Polaroid* factors "must be applied with an eye toward[s]" …"several types of consumer confusion, including point-of-sale confusion, initial interest confusion, and post-sale confusion…." *Burlington Coat Factory,* 426 F.3d at 537 n.2 (citations omitted). "[E]ach factor must be evaluated in the context of how it bears on the ultimate question of likelihood of confusion as to the source of the product." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 872 (2d Cir. 1986). This confusion can be shown if the public believes the mark's owner sponsored or otherwise approved of the defendant's use of the mark. *Id.*, (citing *Dallas Cowboy Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir. 1979)). Apropos here, as in *Lois Sportswear* wherein the stitching design on the back pocket of blue jeans was at issue, is the following guideline:

> Therefore, the *Polaroid* factors must be applied in the instant case
> with an eye to how they bear on the likelihood that [defendants']
> use of [plaintiff's] trademark stitching pattern will confuse
> consumers into thinking that [plaintiff] is somehow associated with
> [defendants] or has consented to their use of the stitching pattern
> regardless of labeling. *Lois Sportswear,* 799 F.2d at 872.[4]

---

[4] *Lois Sportswear* commenced as a declaratory judgment action to show non-infringement with a counterclaim by Levi for infringement, and thus here Levi is referenced as the plaintiff (the "appellee") in the decision quoted.

### 1.    Strength Of Plaintiff's Trademarks And Trade Dress

"The strength of a mark is its tendency to identify the goods sold as emanating from a particular source, even when the source is unknown to the consumer." *Centaur,* 830 F.2d at 1225. This factor is often assessed with the same evidence as the initial assessment of whether the mark is protectible; that is, the mark's secondary meaning and classification. *See, e.g., Lois Sportswear,* 799 F.2d at 873; *Centaur,* 830 F.2d at 1225-26. The following classification of a mark, by Judge Friendly, has been widely followed: "Arrayed in an ascending order which roughly reflects their eligibility to trademark status and the degree of protection accorded, these classes are (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir. 1976).

In *Lois Sportswear,* the Second Circuit determined that "the mark, being a fanciful pattern of interconnected arcs, is within Judge Friendly's fourth category and is entitled to the most protection the Lanham Act can provide." 799 F.2d at 871.[5] Similarly, here, Plaintiff's signature mark is a fanciful pattern of interconnected arcs and thus must be deemed a strong mark. Likewise, Plaintiff's composite mark (the signature mark and crystal besom pocket) is a fanciful extension of the interconnected arcs and is therefore a strong mark. As to Plaintiff's crystal trade dress, it is an arbitrary embellishment, the strength of which must be deemed to cover at least the Defendant's copying.

---

[5] Levi's mark is described in registrations at the U.S. Patent and Trademark Office as "a double arcuate." An example is attached as Exhibit N, ¶ 15 Culver Decl.

### 2.    **Similarity Of The Marks And Trade Dress**

"The similarity of the marks is a key factor in determining likelihood of confusion."

*Dooney & Bourke,* 454 F.3d at 117. *See also Burlington Coat Factory,* 426 F.3d at 537

(similarity is of "salient importance"). In *Lois Sportswear,* the Second Circuit compared the

designs on the back pockets of the parties' jeans and found that "the similarity of the two

patterns is striking." 799 F.2d at 873.

> When this striking similarity is factored into the likelihood of
> confusion analysis, its great importance becomes clear. In view of
> the trademark's strength, this nearly identical reproduction of the
> stitching pattern no doubt is likely to cause consumers to believe
> that [plaintiff] somehow is associated with [defendants] or at least
> associated with [defendants] or at least has consented to the use of
> its trademark. In the post-sale context, this striking similarity no
> doubt will cause consumers to transfer the goodwill they feel for
> [plaintiff] to [defendants], at least initially. This misuse of
> goodwill is at the heart of unfair competition. [Defendants']
> reliance on the effect of their labeling with respect to this factor
> underscores their misguided focus on only the most obvious form
> of consumer confusion. [Defendants'] labeling in no way dispels
> the likelihood that consumers will conclude that [defendants']
> jeans are somehow connected to [plaintiff] by virtue of the nearly
> identical stitching patterns. *Id.* at 873-74.

As indicated above, the Second Circuit in *Lois Sportswear* was attentive to the likelihood

of post-sale confusion, which was further explained as follows:

> In the instant case, this post-sale confusion would involve
> consumers seeing [defendants'] jeans outside of the retail store,
> perhaps being worn by a passer-by. The confusion the Act seeks to
> prevent in this context is that a consumer seeing the familiar
> stitching pattern will associate the jeans with [plaintiff] and that
> association will influence his buying decisions. Clearly, in this
> post-sale context [defendants'] labels, most of which having long
> been discarded, will be of no help. *Id.* at 872-73.

Here, as in *Lois Sportswear,* the likelihood of post-sale confusion is palpable. As shown

in the photograph of Defendant's product, a hangtag with Defendant's name may be attached to

13

the backside which exhibits the infringing designs. That tag is obviously removable by the purchaser. "Once the tag comes off, the bags are again virtually identical and likelihood of confusion remains." *LeSportsac*, 754 F.2d at 80. *See also Hermès International v. Lederer de Paris Fifth Avenue, Inc.*, 219 F.3d 104 (2d Cir. 2000) (post-sale confusion even if purchaser knew product was not authentic).[6]

Because of the striking similarities present here, the likelihood of other types of confusion is also present. At the point of sale, purchasers need only believe that Plaintiff sponsored, consented to or is somehow associated with Defendant's product. This confusion thus arises here regardless of Defendant's product labeling. Initial interest confusion is also likely to arise: "potential consumers initially are attracted to the junior user's mark by virtue of its similarity to the senior user's mark, even though these consumers are not actually confused at the time of purchase." *Jordache Enterprises, Inc. v. Levi Strauss & Co.*, 841 F.Supp. 506, 514-15 (S.D.N.Y. 1993). "Such initial confusion works a sufficient trademark injury." *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 260 (2d Cir. 1987). These types of confusion are further evident in the next similarity factor discussed below.

### 3.    Proximity Of The Products

This factor is also known as competitive proximity. *Centaur*, 830 F.2d at 1226. The central issue is whether similar products compete in similar markets. *See Paddington*, 996 F.2d at 586; *Lois Sportswear*, 799 F.2d at 874. "Products which directly compete in the marketplace clearly warrant a finding of the highest degree of competitive proximity." *Hasbro*, 858 F.2d at 77.

---

[6] Defendant's name also appears on the inside waistband, which is not visible post-sale when the pants are worn, and in far smaller lettering on the fly button and front pocket rivets. *See* Culver Decl. Exhibit O, ¶ 16.

As in *Lois Sportswear,* this factor weighs in Plaintiff's favor because "[b]oth products are jeans." 799 F.2d at 874. Even if there are market segments recognized in the trade for premium and non-premium jeans, these segments do not have rigid barriers that bar normal consumer behavior of buying apparel at various price points. Since both of the parties' products are marketed for a female, her clothes closet will naturally contain such apparel. The price ranges of Plaintiff's products at $200 to $340 and Defendant's products at $88 to $158 are not so disparate that they prevent consumer migration from one to the other.

Addressing this factor, *Lois Sportswear* found confusion in two ways:

> The fact that [defendants'] jeans arguably are in a different market segment makes this type of confusion *more likely.* Certainly a consumer observing [plaintiff's] striking stitching pattern on [defendants'] designer jeans might assume that [plaintiff] had chosen to enter that market segment using a subsidiary corporation, or that [plaintiff] had allowed [defendants'] designers to use [plaintiff's] trademark as a means of reaping some profits from the designer jean fad without a full commitment to that market segment. Likewise, in the post-sale context a consumer seeing [defendants'] jeans on a passer-by might think that the jeans were [plaintiff's] long-awaited entry into the designer jeans market segment. 799 F.2d at 874 (emphasis in original).

Although here the roles are reversed because Plaintiff markets designer jeans, the principles are still operative. A consumer may mistakenly assume that Plaintiff has licensed its property to take in a mass market with lower prices and quality.

### 4.   Bridging The Gap

This factor examines whether the senior user will enter the market of the junior user. However, since the parties here are already in competition, as discussed above, this factor is irrelevant and favors neither party. *Paddington,* 996 F.2d at 586. *But see Hasbro,* 858 F.2d at 78 ("Although the magistrate considered this factor irrelevant, because both users operate in the

same market, this very fact indicates that a greater likelihood of confusion exists than if they operated in different markets").

### 5.   Junior User's Good Or Bad Faith

The Second Circuit in *Paddington* set forth the following law applicable here:

> Where a second-comer acts in bad faith and intentionally copies a trademark or trade dress, a presumption arises that the copier has succeeded in causing confusion. In determining a defendant's intent, "actual or constructive knowledge" of the prior's user's mark or dress may indicate bad faith. Where such knowledge is accompanied by similarities so strong that it seems plain that deliberate copying has occurred, we have upheld findings of bad faith. 996 F.2d at 586-87 (citations omitted).

In this instance, Defendant clearly copied Plaintiff's marks and dress, as the similarities are striking and self-evident. That the parties have arrived at the same exact destination essentially precludes the possibility that they took independent routes. *See id.* at 587 (similarities "so striking that its is hard to imagine how [defendant] could have come up with the dress for [its product] without intentional copying"). While copying may be permissible in some contexts, including parody or use of functional features, such exceptions are inapplicable here. "In light of the fact that the stitching pattern is in no way dictated by function and an infinite number of patterns are possible, the similarity of the two patterns is striking." *Lois Sportswear,* 799 F.2d at 873. Particularly in the area of designer jeans wherein the back pocket is a placeholder for branding, Defendant's attempt to cash in on Plaintiff's creativity and goodwill clearly demonstrates bad faith.

### 6.   Quality Of The Junior User's Product

As to this factor, "[t]he lack of marked difference in quality between goods supports the inference that they emanate from the same source." *Centaur,* 830 F.2d at 1228. On the other hand, "an inferior quality product produced by the junior user injures the senior user's reputation

insofar as consumers might think that the source of the inferior product is the senior user." *Hasbro,* 858 F.2d at 78. This harm to reputation would thus support the irreparable harm requisite for injunctive relief.

Here, Plaintiff's assessment of the quality of Defendant's product is preliminary since it only recently obtained a product sample. Overall, Plaintiff uses better quality fabrics and workmanship in its products, although Defendant's product appears to be of a quality consistent with its price. Thus, this factor weighs in favor of a likelihood of confusion and the relief requested since the overall lack of marked differences in quality suggests the same source, while the lesser quality of Defendant's product evidences irreparable harm.

### 7.  **Actual Confusion**

"Of course, it is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." *Lois Sportswear,* 799 F.2d at 875. Since Plaintiff only recently learned of Defendant's infringement, the lack of evidence as to actual confusion should not weigh against Plaintiff's request for preliminary relief. *See Hasbro,* 858 F.2d at 78.

### 8.  **Sophistication Of Purchasers**

"The final *Polaroid* factor, the sophistication of the relevant consumer group, is grounded on the belief that unsophisticated consumers aggravate the likelihood of confusion." *Hasbro,* 858 F.2d at 78-79. While a lower product price suggests lower sophistication, *see id.,* a higher price does not necessarily lessen the likelihood of confusion. *See Grotrian, Helfferich, Schulz, Th. Steinweg Nachf v. Steinway & Sons,* 523 F.2d 1331, 1341-42 (2d Cir. 1975) (initial interest confusion present despite purchase of high priced pianos). Overall, the strength of this factor may be lessened when the marks and products are identical. *See Centaur,* 830 F.2d at 1228.

In *Lois Sportswear,* the Second Circuit stated: "we believe that it is a sophisticated jeans consumer who is most likely to assume that the presence of [plaintiff's] trademark stitching pattern on [defendants'] jeans indicate some sort of association between the two manufacturers. Presumably it is these sophisticated jeans buyers who pay the most attention to back pocket stitching patterns and their 'meanings.'" 799 F.2d at 875. Likelihood of confusion in the post-sale context was also more likely for sophisticated purchasers as observers of branding on back pockets. *Id.*

The above analysis for sophisticated purchasers is applicable here and weighs in Plaintiff's favor. Additionally, simple point-of-purchase confusion among unsophisticated purchasers is also applicable because the market for blue jeans is obviously youth oriented, even at higher prices, and a youth with money does not necessarily equate with a sophisticated purchaser who checks the source of origin before a purchase.

### E.    **Balancing The Factors Favors Relief**

The *Polaroid* factors decidedly tip in Plaintiff's favor. As stated above, there is a presumption of a likelihood of confusion from the intentional copying. *Perfect Fit,* 618 F.2d at 954. The "key factor" of "salient importance"—the similarity of the marks—weighs in at its maximum when the marks are identical, particularly since the products are also identical. Further, the striking similarities at hand establish Defendant's bad faith.

Under the standards for the New York common law of unfair competition, Plaintiff has shown a likelihood of success on the merits, and thus injunctive relief is appropriate.

> Almost invariably the selection by a defendant for use in his business of a trade name or mark which has theretofore been used and advertised by another, is for the purpose of appropriating its value and reaping the benefit of him who may have made that name an emblem of quality, or of taste, or a symbol of fair dealing. Equity does not shirk from interfering to prevent such spoliation.

18

> Names other than plaintiff's, there are in plenty, which defendant
> could have selected. *John Forsythe Co. v. Forsythe Shoe Corp.,*
> 234 A.D. 355, 254 N.Y.S. 584, 587 (1st Dept. 1932), *aff'd as
> modified on other grounds,* 259 N.Y. 248, 181 N.E. 467 (1932).

The second-comer doctrine, as reflected in the above case and others cited herein, lies at the heart of unfair competition. There are a multitude of designs that Defendant could have chosen for its product, yet it chose to take in wholesale fashion a designer's signature mark and dress. Defendant seeks to reap where it has not sown, and such conduct should be enjoined.

**F.**    **Plaintiff's Marks And Trade Dress Are Non-functional**

For purposes of this motion for a preliminary injunction, Plaintiff demonstrates that Defendant cannot prove that Plaintiff's marks and trade dress are functional. Under New York State law, functionality is an affirmative defense borne by the defendant. *See Gemvetto Jewelry Co. v. Jeff Cooper, Inc.,* 615 F.Supp. 1052, 1061 (S.D.N.Y. 1985), *vacated on other grounds,* 800 F.2d 256 (Fed. Cir. 1986). *See also Diamond Expansion Bolt Co. v. U.S. Expansion Bolt Co.,* 177 A.D. 554, 164 N.Y.S. 433, 435-36 (1st Dept. 1917) (weighing first plaintiff's infringement contentions and second defendant's contentions on functionality). While the 1999 amendment to the Lanham Act reversed this burden of proof for federal law, *see Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 116 (2d Cir. 2001), there is no authority or reason for departing from the New York common law rule.

Plaintiff's marks and trade dress cannot be deemed functional based on any utilitarian advantage. *Compare, Stormy Clime, Ltd. v. ProGroup, Inc.,* 809 F.2d 971 (2d Cir. 1987) (utilitarian advantages in the features of a raincoat). There is simply no such advantage in the designs at issue. "[O]rnamental features can be deemed functional if the protection of these elements would significantly hinder competition by limiting the range of available designs." *Fruit-Ices Corp. v. CoolBrands Int'l Inc.,* 335 F.Supp.2d 412, 423 (S.D.N.Y. 2004). However,

19

the availability of alternative designs, as shown by competitors and Defendant, dooms this defense. *See id.* The collection of designer logos for back pockets discussed earlier shows a multitude of alternative designs. *See* Exhibit M, ¶ 14 Culver Decl. The jeans displayed on Defendant's website also evidence further alternative designs. *See* Exhibit D, ¶ 5 Culver Decl. Plaintiff's marks and trade dress therefore cannot be deemed functional, as their exclusive use by Plaintiff would not hinder competition in any significant way.

## V.    Conclusion

Based on the foregoing evidence and law, Plaintiff submits that it has shown a likelihood of confusion, and thus irreparable harm—by the loss of control by Plaintiff and injury to reputation—is presumed. Accordingly, an order should issue preliminarily enjoining Defendant's infringing conduct.

Dated: Arlington, Virginia
    August 10, 2007

MILLEN, WHITE, ZELANO &
BRANIGAN, P.C.
Attorneys for Plaintiff


By: s/Michael S. Culver
    Michael S. Culver
    (admitted *pro hac vice*)
    culver@mwzb.com
2200 Clarendon Blvd., Ste. 1400
Arlington, VA 22201-3360
(703) 243-6333 tel.
(703) 243-6410 fax.

EDWARD F. WESTFIELD, P.C.
Attorneys for Plaintiff
    Edward F. Westfield Jr.
    (EW1625)
    efwjr@efwpc.com
274 Madison Avenue, Suite 1601
New York, NY 10016-0701
(212) 532-6625 tel
(212) 532-6627 fax