UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KARAM PRASAD LLC d/b/a/ BISHOP OF SEVENTH,<br><br>       Plaintiff,<br><br> - *against* -<br><br>CACHE, INC.,<br><br>       Defendant. | Case No. 2007 CV 5785 (PAC)<br><br>**PLAINTIFF'S MEMORANDUM OPPOSING DEFENDANT'S MOTION TO DISMISS COUNTS 5-8 OF AMENDED COMPLAINT (ELECTRONICALLY FILED)** |

## INTRODUCTION

  Plaintiff Karam Prasad, LLC ("Plaintiff") hereby submits this memorandum in opposition to Defendant Cache, Inc.'s ("Defendant") motion to dismiss Counts five through eight of Plaintiff's Amended Complaint. Defendant's motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure seeks to dismiss Plaintiff's claims under New York General Business Law Sections 349 and 360-*l* relating to, respectively, deceptive acts and practices and trademark dilution. Defendant's arguments are directed to one element in each of these GBL Sections, and in each instance these arguments are misdirected.

  As shown herein, Plaintiff's claims under Section 349 are in the public interest because trademark infringement is inherently a deceptive act, and its elimination obviously benefits consumers and the public interest. Regarding trademark dilution, Defendant attempts to put the cart before the horse by testing the strength of Plaintiff's trademarks at the pleading stage. That strength is a factual question that awaits development through discovery and trial. At this

1

pleading stage, Plainitff has alleged sufficient elements for both Sections 349 and 360-*l*, and thus the Amended Complaint does state claims upon which relief can be granted.

## ARGUMENT

### I. Plaintiff's Claims Under Section 349 Are In The Public Interest

Section 349(a) states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." The reference to "any" business or service in this Section, and its counterpart in Section 350 for false advertising, prompted the New York Court of Appeals to observe that, "These statutes on their face apply to virtually all economic activity, and their application has been correspondingly broad." *Karlin v. IVF America, Inc.,* 93 N.Y.2d 282, 290-91, 712 N.E.2d 662, 690 N.Y.S.2d 495 (1999) (collecting cases, footnote omitted). *See also New York v. Feldman,* 210 F.Supp.2d 294, 301 (S.D.N.Y. 2002) (the statute "may be invoked regardless of whether the allegedly deceptive activity is covered by other laws").

Relying on the construction of the statute by the New York Court of Appeals in *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20 (1995), the Second Circuit stated the following:

> To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result. *Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir. 2000) (per curiam).

As to the first element, which is challenged here by Defendant, the Second Circuit had previously stated:

> It is clear that "the gravamen of the complaint must be consumer injury or harm to the public interest." [Citation omitted.] The critical question, then, is whether the matter affects the public interest in New York, not whether

> the suit is brought by a consumer or a competitor. *Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 264 (2d Cir. 1995), *cert. denied,* 516 U.S. 1115 (1996) (quoting *Azby Brokerage, Inc. v. Allstate Ins. Co.,* 681 F.Supp. 1084, 1089 n.6 (S.D.N.Y. 1988)).

*See also Maurizio,* 230 F.3d at 522; *Oswego,* 85 N.Y.2d at 25 (plaintiff "must demonstrate that the acts or practices have a broader impact on consumers at large"). Defendant does not dispute that it conducts consumer-oriented acts by selling clothes to purchasers through its store and website. Thus, the first element of a prima facie case is unchallenged as to the facts, but Defendant submits that a legal interpretation of the statute has not been satisfied.

Defendant argues the point as whether there is sufficient public injury or harm within Plaintiff's allegations of trademark infringement, although *Securitron* casts the question as whether there is injury or harm to the public interest. The facts in *Securitron* illustrate how the defendants' actions were "contrary to the public interest." 65 F.3d at 264. The defendants in *Securitron* characterized themselves as "Charles Schnabolk and his two one-man corporations." *Id.* at 263. Mr. Schnabolk, with his companies, were competitors with plaintiff in the field of electromagnetic security locks as sold to schools, hospitals and other public buildings. Mr. Schnabolk undertook a smear campaign using false information and intimidation that rendered him liable for $1,050,000 plus costs and attorney's fees for his defamation and violations of the Racketeer Influenced and Corrupt Organization Act and N.Y. GBL § 349. Schnabolk provided false information regarding the plaintiff's product to the New York City Bureau of Standards and Appeals ("BSA"), the city agency having jurisdiction to approve building materials, to the Underwriters Laboratories ("UL"), who worked with the BSA, and to the New York City Health and Hospitals Corporation ("HHC"), who first awarded a contract to plaintiff's dealer, but later

3

cancelled this contract likely due to Schnabolk's false information and intimidation. *Id.* at 258-59, 260-61. The *Securitron* court held "that the harm to the public was manifest." *Id.* at 264.

> The evidence demonstrated that appellants gave false information about the Securitron Magnalock to the BSA, a regulatory agency primarily concerned with the safety of the public. Schnabolk caused the BSA to undertake unnecessary investigations and interfered with its decision making process by complaining of non-existent "potential danger ... in fire safety situations." His activities in this respect surely were contrary to the public interest.
> Also, appellants disseminated false information to HHC in regard to electromagnetic lock installations at the Neponset Health Care Center and may have caused the unnecessary cancellation of an awarded contract. Finally, it was detrimental to divert the attention of the UL from its normal activities to attend to the false accusations and deceptions of the appellants. The UL stamp of approval is frequently required to assure the safety of electrical equipment and installations in New York. *Id.* at 264-65.

From the foregoing facts, it is apparent that consumers and the public at large were not aware of any controversy between the parties and were not exposed to any danger to health or safety since Mr. Schnabolk's accusations were false in that the plaintiff's product posed no such danger. In essence, the harm to the public interest was present because Mr. Schnabolk wasted the time of municipal and private organizations with unnecessary accusations. It is equally apparent that the plaintiff was grievously harmed by defendants' deceptions. That the case exhibited both private and public harms did not remove it from the ambit of Section 349. Instead, the "critical question, then, is whether the matter affects the public interest ...." *Id.* at 264. "Based on this standard, courts have found sufficient allegations of injury to the public interest where plaintiffs plead repeated acts of deception directed at a broad group of individuals." *New York v. Feldman,* 210 F.Supp.2d at 301 (collecting cases). Trademark infringement cases are within the scope of this standard.

Courts have repeatedly stated that the cessation of trademark infringement is in the public interest. These statements appear routinely in the context of preliminary injunctions wherein the

multi-factor test calls for addressing the public interest. *See, e.g., Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 115 (1st Cir. 2006) ("as a matter of public policy, trademarks should be protected against infringing uses"); *KOS Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 730 (3d Cir. 2004) ("the most basic public interest at stake in all Lanham Act cases: the interest in prevention of confusion, particularly as it affects the public interest in truth and accuracy"); *Sunbeam Products Inc. v. West Bend Co.*, 123 F.3d 246, 260 (5th Cir. 1997) ("the public interest calculus is subsumed within the merits of the trade dress infringement claim: Because the product configuration …is entitled to trade dress protection, it necessarily follows that the preliminary injunction serves the public interest"); *Tally-Ho Inc. v. Coast Community College District*, 889 F.2d 1018, 1029 (11th Cir. 1989) ("the injunction would be in the public interest by avoiding the inevitable viewer confusion that would otherwise result").[1]

That trademark infringement cases are within the ambit of Section 349 can also be shown by another approach. Section 349, as one of the so-called "Little FTC Acts" enacted by various states, is to be interpreted "by looking to the definition of deceptive acts and practices under section 5 of the Federal Trade Commission Act ('FTC Act'), 15 U.S.C. § 45." *New York v. Feldman*, 210 F.Supp.2d at 302 (collecting cases). *See also People ex rel. Spitzer v. Applied Card Systems, Inc.*, 27 A.D.3d 104, 805 N.Y.S.2d 175, 178 (A.D.3 Dept. 2005). In this regard, it has long been recognized that trademark infringement is a deceptive act within the scope of section 5 of the FTC Act. *See, e.g., Federal Trade Commission v. Real Products Corp.*, 90 F.2d 617 (2d Cir. 1937); *Federal Trade Commission v. Balme*, 23 F.2d 615 (2d Cir. 1928). In *Real Products*, the respondent was enjoined from using the mark CHAMPION for spark plugs and

---

[1] Although the multi-factor test for a preliminary injunction in the Second Circuit does not specifically recite the public interest as a factor, it may be applied in a proper case. *Standard & Poor's Corp., Inc. v. Commodity Exchange, Inc.*, 683 F.2d 704, 711-12 (2d Cir. 1982) (affirming preliminary injunction based on trademark infringement and misappropriation).

automotive accessories because the use "was false, deceptive, and misleading to the retail trade and the purchasing public and had a tendency to and did deceive the purchasing public by creating the impression that the products of the respondents were those of the Champion Spark Plug Company." 90 F.2d at 619. The Second Circuit also held that the FTC's cease and desist order was in the public interest. *Id.* Likewise in *Balme,* the respondent was enjoined from infringing the mark and trade dress of the L'Oreal Henne product as a matter of public interest because "[t]he purchasing public should be protected from deception, if that deception results in their securing an article or product which they did not intend to purchase, as well as where an article is misbranded." 23 F.2d at 620. *See also Pep Boys—Manny, Moe & Jack, Inc. v. Federal Trade Commission,* 122 F.2d 158, 161 (3d Cir. 1941) ("the purchasing public is entitled to be protected against the species of deception practiced by the petitioner and that its interest in such protection is specific and substantial").

The U.S. Supreme Court has approved of this use of the FTC Act. *See Federal Trade Commission v. Colgate-Palmolive Co.,* 380 U.S. 374, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965). At issue in that case was a television commercial for shaving cream that falsely depicted the product's qualities. *Id.* at 376-77. In rebutting the respondent's arguments, the Supreme Court compared the violation to other types of deceptive acts: "And it has also been held that it is a deceptive practice to misappropriate the trade name of another." *Id.* at 388. The Court continued its reasoning as follows: "We find an especially strong similarity between the present case and those cases in which the seller induces the public to purchase an arguably good product by misrepresenting his line of business, by concealing the fact that the product is reprocessed, or by misappropriating another's trademark." *Id.* at 388-89.

6

The U.S. Supreme Court has also held that enjoining the use of a confusing similar trade name is in the public interest. *See American Airlines, Inc. v. North American Airlines, Inc.*, 351 U.S. 79, 76 S.Ct. 600, 100 L.Ed. 953 (1956). At issue was a violation of § 411 of the Civil Aeronautics Act, 49 U.S.C. § 491, and the order of the Civil Aeronautics Board denying North American the use of its trade name because "that use of the name 'North American' infringed upon its long-established trade name, 'American,' and constituted an unfair method of competition in violation of § 411 of the Act." *Id.* at 80. "[T]he Court of Appeals set aside the order because the public interest in this proceeding was inadequate to justify exercise of the Board's jurisdiction under § 411." *Id.* at 81. The Supreme Court noted that "[s]ection 411 was modeled closely after § 5 of the Federal Trade Commission Act," and "[w]e may profitably look to judicial interpretation of § 5 as an aid in the resolution of the questions raised here under § 411." *Id.* at 82. The Court reversed and held that the Board's order was in the public interest. *Id.* at 86. The Court again drew the analogy to § 5 of the FTC Act in "that the use of a trade name that is similar to that of a competitor, which has the capacity to confuse, or deceive the public, may be prohibited by the Commission." *Id.*, (citing with approval *Pep Boys, supra*).

The New York state courts have also compared favorably FTC action to enjoin a misleading trade name as within the scope of Section 349. In setting forth "some of the relevant case law to provide a sample list of typical transactions cognizable under General Business Law § 349," the courts have cited *Century Metalcraft Corp. v. Federal Trade Comm.*, 112 F.2d 443 (7th Cir. 1940) (enjoining use of SILVER SEAL as a misrepresentation of the origin, nature or quality of the product). *Teller v. Bill Hayes, Ltd.*, 213 A.D.2d 141, 630 N.Y.S.2d 769, 773 (A.D. 2 Dept. 1995) (citing *Goldberg v. Manhattan Ford Lincoln-Mercury*, 129 Misc.2d 123, 492 N.Y.S.2d 318 (N.Y. Sup. 1985).

In construing Section 349, courts have also drawn on similar acts in other states. *See Genesco Entertainment v. Koch,* 593 F.Supp. 743, 752 (S.D.N.Y. 1984); *People v. Colorado State Christian College,* 76 Misc.2d 50, 346 N.Y.S.2d 482, 488 (N.Y. Sup. 1973) (collecting other state statues). In this regard, the Supreme Court of Washington State, sitting *en banc*, has ruled that trademark infringement is within the scope of the public interest requirement of its comparable statute.

> A necessary component of trade name infringement is that the plaintiff must establish that the name used is likely to confuse the public. This confusion of the public, absent some unusual or unforeseen circumstances, will be sufficient to meet the public interest requirement of the Consumer Protection Act. We emphasize that this is not a per se rule, but rather a function of what we perceive as the overlapping nature of proof in both trade name infringement cases and Consumer Protection Act violations. *Nordstrom, Inc. v. Tampourlos,* 107 Wash.2d 735, 733 P.2d 208, 212 (1987).

Contrary to the impression offered by Defendant, the federal courts in New York have found violations of Section 349 in trademark infringement cases and related cases. *See Gross v. Bare Escentuals, Inc.,* No. 03 Civ. 3089, 2006 WL 3161386, at * 3 (S.D.N.Y. October 30, 2006); *GTFM, Inc. v. Solid Clothing, Inc.,* 215 F.Supp.2d 273, 302 (S.D.N.Y. 2002); *In re Houbigant Inc.,* 914 F.Supp. 964, 983-84 (S.D.N.Y. 1995); *Centaur Communications Ltd. v. A/S/M Communications, Inc.,* 652 F.Supp. 1105, 1114 (S.D.N.Y. 1987), *aff'd on other grounds,* 830 F.2d 1217 (2d Cir. 1987); *Vitabiotics, Ltd. v. Krupka,* 606 F.Supp. 779, 785 (E.D.N.Y. 1984). *See also Capitol Records, Inc. v. Wings Digital Corp.,* 218 F.Supp.2d 280, 286 (E.D.N.Y. 2002) (copyright infringement); *Construction Technology, Inc. v. Lockformer Co., Inc.,* 704 F.Supp. 1212, 1222-23 (S.D.N.Y. 1989) (false advertising). Nevertheless, the split of case law, on whether trademark infringement cases are within Section 349, has been noted by this court.

*Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC,* 221 F.Supp.2d 410, 413 n.2 (S.D.N.Y. 2002).

Defendant also overstates the case that "Section 349 claims have been found appropriate *only* where the public injury consists of a potential danger to public health or safety." Memorandum p.4 (emphasis added, internal quotations omitted) (citing *Gucci America, Inc. v. Duty Free Apparel, Ltd.,* 277 F.Supp.2d 269, 273 (S.D.N.Y. 2003). The *Gucci America* court stated: "injury or harm that satisfy this standard *include* potential danger to the public health or safety." *Id.* (emphasis added, internal quotations omitted).

The *Gucci America* court strained to distinguish some of the foregoing cases, accepting Section 349 claims, as somehow involving a larger public harm than the public harm found in other trademark infringement cases. 277 F.Supp.2d at 274. It is respectfully submitted, however, that there is no principled way to harmonize or distinguish the differing applications of Section 349 claims in trademark infringement cases. To attempt to do so draws the courts into fine distinctions that are not consistent with the broad scope of Section 349 that covers "virtually all economic activity." *Karlin, supra.*

For example, the above-cited *Vitabiotics* decision, involving the plaintiff's trademark and trade dress for vitamins, was later distinguished in a case involving the plaintiff's trademark and trade dress for over-the-counter analgesics because in the former the defendant's vitamins "allegedly contained unlawful substances," whereas in the latter case the ingredients did not pose a risk to public health. *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.,* 786 F.Supp. 182, 216 (E.D.N.Y. 1992), *vacated in part on other grounds,* 973 F.2d 1033 (2d Cir. 1992). Defendant also relies (Mem. p.4) on *Weight Watchers Int'l, Inc. v. Stouffer Corp.,* 744 F.Supp. 1259, 1285 (S.D.N.Y. 1990) as showing a public harm sufficient to satisfy Section 349 because the products

9

were diet foods; however, that line-drawing would entail allowing claims under Section 349 for bottled water, for example, as a healthy product while rejecting claims involving trademarks for sugary soft drinks, and perhaps considering claims for trademarks for organic foods, but only if health claims were also at issue. The harm to the public from trademark infringement is no different in the *GTFM* case cited above involving clothing than in trademarks covering diet foods.

The decisions relied upon by Defendant have put an unnecessary gloss on the statute by seeking to find a health or safety factor in order for Section 349 to apply. That approach is inconsistent with the public interest factor set forth by the Second Circuit in *Securitron*, and inconsistent with the analogous use of Section 5 of the FTC Act as applied to trademark infringement. Under those guiding principles, trademark infringement actions are within the substantive scope of Section 349 and the requirement for the plaintiff's claims to advance the public interest.

## II.   Plaintiff's Pleading Satisfies The Requirements of Section 360-*l*

Section 360-*l* of the General Business Law states, in pertinent part, that "[l]ikelihood of injury to business reputation or of dilution of the *distinctive* quality of a mark or trade name shall be a ground for injunctive relief ..." (emphasis added). Consistent with this wording, "[i]n order to establish a dilution claim, two elements must be shown: (1) ownership of a distinctive mark, and (2) a likelihood of dilution." *Hormel Foods Corp. v. Jim Henson Productions, Inc.*, 73 F.3d 497, 506 (2d Cir. 1996).

Plaintiff has pleaded that its trademarks are inherently distinctive (Amended Complaint ¶ 12). Plaintiff has also pleaded factual support for that conclusion in that Plaintiff's principals have had experience with well-known fashion designers, the trademark was created to identify

10

and distinguish the clothing which is sold in fashionable department stores and high-end boutiques and it is known in the trade and to customers as Plaintiff's distinguishing trademark (*Id.* ¶¶ 6-9).[2]

The central point of Defendant's argument is that "to successfully allege a claim for dilution, a plaintiff must plead that its mark is famous or extremely strong" (Mem. p. 8) citing *Olay Co. v. Cococare Prod. Inc.*, 218 USPQ 1028, *SMJ Group, Inc. v. 417 Lafayette Rest. LLC*, 06 Civ. 1774, 2006 WL 2516519 (S.D.N.Y. August 30, 2006); and *Christopher D. Smithers Found. Inc. v. St. Lukes-Roosevelt Hosp. Ctr.*, 2001 WL 761076 (S.D.N.Y. July 6, 2001). However, these cases do not support that argument. In *Christopher D. Smithers*, the court dismissed a federal, not state, action for dilution because the plaintiff did not plead the mark was famous, and the court declined to exercise supplemental jurisdiction over the state claims. In *Olay*, the court reached its conclusions after a ten-day trial, not on a motion to dismiss, and did not determine whether the plaintiff's mark was distinctive. 218 USPQ at 1030, 1044.

*SMJ Group* correctly states: "New York's dilution statute does not require that a mark be famous. However, the mark must 'possess a distinctive quality capable of dilution.'" 2006 WL 2516519 at *3 (quoting *Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1030 (2d Cir. 1989). *SMJ Group* also correctly states: "[a] trademark may be distinctive for purposes of New York law if it has acquired secondary meaning or if it is inherently distinctive." *Id.* Based on the cases cited by Defendant, its argument is legally incorrect and Plaintiff has satisfied the requirements for pleading under Section 360-*l*.

---

[2] While the above-noted pleading is sufficient, to the extent necessary to go beyond the pleadings, Plaintiff submits that the marks are strong as fanciful marks as explained in Plaintiff's Memorandum in Support of Motion for Preliminary Injunction at p. 12.

11

Whether Plaintiff's marks are sufficiently distinctive to be afforded the protection of the statute is a matter of proof, but at this stage Plaintiff has satisfied the requirements for pleading. The standard for ruling on Defendant's motion is set forth by the Second Circuit in *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 1999) as follows:

> Dismissal of a complaint pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957) [citation omitted]. At the Rule 12(b)(6) stage, "[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir. 1998) (internal quotation marks omitted). Our task in reviewing a 12(b)(6) ruling "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder energy Dist. Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir. 1984) (internal quotation marks omitted).

## CONCLUSION

In view of the foregoing, Defendant's Rule 12(b)(6) motion should be dismissed.

Dated: Arlington, Virginia
August 16, 2007

**MILLEN, WHITE, ZELANO & BRANIGAN, P.C.**
Attorneys for Plaintiff

By: s/Michael S. Culver
Michael S. Culver
(admitted *pro hac vice*)
culver@mwzb.com
2200 Clarendon Blvd., Ste. 1400
Arlington, VA 22201-3360
(703) 243-6333 tel.
(703) 243-6410 fax.

**EDWARD F. WESTFIELD, P.C.**
Attorneys for Plaintiff
    Edward F. Westfield Jr.
    (EW1625)
    efwjr@efwpc.com
274 Madison Avenue, Suite 1601
New York, NY 10016-0701
(212) 532-6625 tel
(212) 532-6627 fax


TO:    NIXON PEABODY LLP
       Attorneys for Defendant
       Attn: Tamar Duvdevani, Esq.
       (tduvdevani@nixonpeabody.com)
       437 Madison Ave., Fl. 23
       New York, NY 10022-7039
       (212) 940-3000 tel
       (212) 940-3111 fax