UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KARAM PRASAD LLC d/b/a BISHOP OF
SEVENTH, a New York limited liability
company,

                Plaintiff,

     -against-

CACHE, INC., a Florida corporation,

                Defendant.

07 CV 5785 (PAC) (JCF)

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION**

**NIXON PEABODY LLP**
**Attorneys for Defendant**
**437 Madison Avenue**
**New York, New York 10022**
**(212) 940-3710**

**Frank W. Ryan**
**Tamar Y. Duvdevani**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

I.     STANDARD GOVERNING PRELIMINARY INJUNCTION MOTIONS......................... 2

II.    PLAINTIFF'S DELAY NEGATES ITS ASSERTION OF IRREPARABLE HARM......... 3

III.   THE FACT THAT CACHE HAS SOLD OVER 6900 PAIRS OF JEANS AND HAS
       LESS THAN 660 PAIRS LEFT FURTHER NEGATES IRREPARABLE HARM ......... 6

IV.    PLAINTIFF HAS UTTERLY FAILED TO DEMONSTRATE THAT ITS PURPORTED
       TRADE MARK AND TRADE DRESS ARE INDICATORS OF SOURCE, BUT ARE
       RATHER NOTHING MORE THAN ORNAMENTAL, AND THUS FUNCTIONAL,
       DESIGNS....................................................................................................................... 6

V.     THE POLAROID FACTOR ANALYSIS FAVORS THE DEFENDANT ......................... 11

   A.   Prasad's Alleged Marks Are Weak........................................................................... 11

      1.    Trade Dress is *Not* Inherently Distinctive................................................... 11

      2.    Prasad Cannot Show Acquired Distinctiveness............................................. 13

      3.    Similarity of the Marks ................................................................................. 13

   B.   The Parties' Respective Products Do Not Compete In The Marketplace........................ 14

   C.   Bridging the Gap....................................................................................................... 15

   D.   There is No Evidence of Bad Faith........................................................................... 15

   E.   Cache Has Not Had The Opportunity to Examine the Quality of Prasad's Product ........ 16

   F.   No Evidence of Actual Confusion ............................................................................ 16

   G.   Sophistication of Purchasers Favors Cache ............................................................. 17

VI.    BALANCE OF HARDSHIPS FAVORS DEFENDANT ................................................. 17

VII.   IF AN INJUNCTION IS GRANTED, PRASAD MUST POST A BOND ...................... 18

CONCLUSION.................................................................................................................... 19

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AB Electrolux v. Bermil Industrial Corp.*, 481 F.Supp.2d 325 (S.D.N.Y. 2007) ..............18

*America Academy of Religion v. Chertoff*, 463 F.Supp.2d 400 (S.D.N.Y. 2006)................2

*Brennan's, Inc. v. Brennan's Restaurant, L.L.C.*, 360 F.3d 125 (2d Cir. 2004)...........11, 14

*Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474 (2d Cir. 1996)................................11

*Centaur Communications, Ltd. v. A/ S/ M Communications, Inc.*, 830 F.2d 1217 (2d Cir. 1987)..................................................................................................13

*Century Time Ltd. v. Interchron Ltd.*, 729 F. Supp. 366 (S.D.N.Y. 1990) ........................5

*Chandon Champagne Corp. v. San Marino Wine Corp.*, 335 F.2d 531 (2d Cir. 1964) ......................................................................................................................3

*Christian v. Alloy, Inc.*, 03 Civ. 10258, 72 U.S.P.Q.2D (BNA) 1697, 2004 U.S. Dist. LEXIS 11150, at *6-7 (S.D.N.Y. June 17, 2004) ...................................................2

*Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)....................................3, 4, 5

*Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162 (2d Cir. 1991) .........................7

*Comic Strip, Inc. v. Fox Television Stations, Inc.*, 710 F. Supp. 976 (S.D.N.Y. 1989) .......................................................................................................................5

*Conopco, Inc. v. Cosmair, Inc.*, 49 F. Supp. 2d 242, 256 (S.D.N.Y. 1999) ....................17

*De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc.*, 440 F. Supp. 2d 249, 279 (S.D.N.Y. 2006) .................................................................................17

*Duraco Prods., Inc. v. Joy Plastic Enterprises, Ltd.*, 40 F.3d 1431, 1440-41 (3d Cir. 1994) ...................................................................................................................12

*Edison Bros. Stores, Inc. v. Cosmair*, 651 F. Supp. 1547, 1551-52 (S.D.N.Y. 1987) .......................................................................................................................17

*Forschner Group, Inc. v. Arrow Trading Co., Inc.*, 124 F.3d 402 (2d Cir. 1997)..............7

*GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 2002 WL 1477821, at *18 (S.D.N.Y. July 11, 2002) ...................................................................................13

*George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1536 (2d Cir. 1992)....................13

*Gidatex, S.R.L.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998) ................................................5

*Harlequin Enterprises Ltd. v. Gulf & Western Corp.*, 644 F.2d 946 (2d Cir. 1981) ..........7

*Helios & Matheson N. Am., Inc. v. Vegasoft Oy*, 07 Civ. 3600, 2007 U.S. Dist. LEXIS 38206, at *6-7 (S.D.N.Y. May 24, 2007) ...........................................................2

*Jack Schwartz Shoes v. Skechers U.S.A.*, 233 F. Supp. 2d 512, 2002 U.S. Dist. LEXIS 25699, at *58 (S.D.N.Y. Sep. 10, 2002)....................................................12

*Johnston v. Standard Mining Co.*, 148 U.S. 360, 370 (1893)...............................................3

*Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996) ....................................................... 2-3

*Juicy Couture, Inc. v. L'Oreal USA, Inc.*, 04 CIV. 7203, 2006 U.S. Dist. LEXIS 20787, at *71 (S.D.N.Y. Apr. 19, 2006) ........................................................................15

*Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1006 (2d Cir 1995)......................8, 10, 12

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 377-78 (2d Cir. 1997) ............................................................................................................................12

*Lapham v. Porach*, 06-Civ-6861, 2007 U.S. Dist. LEXIS 30751, at *29 (S.D.N.Y. Apr. 25, 2007) ............................................................................................................5

*Laureyssens v. Idea Group, Inc.*, 964 F.2d 131 (2d Cir. 1994) ..........................................7

*Le Cordon Bleu v. BPC Publishing Ltd.*, 327 F. Supp. 267 (S.D.N.Y. 1971)....................5

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867 (2d Cir. 1986)..........13

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 155-16 (2d Cir. 2006) ..............................................................................................................................6

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 340 F.Supp.2d 415 (S.D.N.Y. 2004), *rev'd on other grounds*, 454 F.3d 108 (2d Cir. 2006)......................................17

*Magnet Communications, LLC v. Magnet Communications, Inc.*, 2001 U.S. Dist. LEXIS 14460, No. 00 Civ. 5746, 2001 WL 1097865, at *1 (S.D.N.Y. Sept. 19, 2001) ............................................................................................................................4

*Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 543 (S.D.N.Y. 2003) ................................................................................................9

*Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir. 1985) ......................................3

*Morningside Group Ltd. v. Morningside Capital Group, LLC*, 182 F.3d 133, 140 (2d Cir. 1999) ...............................................................................................................14

*Nina Ricci, S.A.R.L. v. Gemcraft Ltd.*, 612 F. Supp. 1520, 1529 (S.D.N.Y. 1985) ..........17

*Nora Beverages v. Perrier Group of Am.,* 269 F.3d 114, 122 (2d Cir. 2001) ..............9, 11

*Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 96 Civ.9469, 1999 U.S. Dist. LEXIS 4382, at *33 (S.D.N.Y. Apr. 7, 1999).............................................................16

*P.F. Cosmetique, S.A. v. Minnetonka, Inc.*, 605 F. Supp. 662, 671 (S.D.N.Y. 1985) ......................................................................................................................17

*Polaroid Corp. v. Polarad Elec. Corp.*, 182 F. Supp. 350, 355 (E.D.N.Y. 1960), *aff'd*, 287 F.2d 492 (2d Cir. 1961) .................................................................................3

*Savin Corp. v. Savin Group*, 391 F.3d 439, 460 (2d Cir. 2004) ......................................15

*Star Indus. v. Bacardi & Co.,* 412 F.3d 373, 390 (2d Cir. 2005)......................................17

*Stormy Clime, Ltd. v. Progroup, Inc.*, 809 F.2d 971 (2d Cir. 1987)...............................8, 9

*Toyota Jidosha Kabushiki Kaisha v. Aliments Lexus, Inc.*, CV-02-0013, 2004 U.S. Dist. LEXIS 10729, at *17-18 (E.D.N.Y. June 14, 2004) .....................................3

*Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.*, 17 F.3d 38, 44 (2d Cir. 1994)..........3

*Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 972 (2d Cir. 1989) ........ 17-18

*W.W.W. Pharmaceutical Co. v. Gillette Co.*, 808 F. Supp. 1013, 1024 (S.D.N.Y. 1992) ......................................................................................................................16

*Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*, 916 F.2d 76, 81 (2d Cir. 1990), *cert. denied*, 499 U.S. 976, 113 L. Ed. 2d 720, 111 S. Ct. 1622 (1991)........................................................................................................................8

## STATE CASES

*Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 369 N.E.2d 1162 (1977).............................................................................................. 7-8

# FEDERAL STATUTES

*Fed. R. Civ. P. 65* ................................................................................................................18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KARAM PRASAD LLC d/b/a BISHOP OF
SEVENTH, a New York limited liability
company,

                              Plaintiff,

          -against-                                      07 CV 5785 (PAC) (JCF)

CACHE, INC., a Florida corporation,

                              Defendant.

## PRELIMINARY STATEMENT

As of the pre-motion conference on August 7, 2007, Caché, Inc. ("Cache") had

approximately 700 pairs of its allegedly infringing jeans left in its national inventory, and stated

this fact both directly to counsel for Karam Prasad LLC d/b/a Bishop Of Seventh, ("Prasad") and

to the Court.  Undeterred by the fact that a showing of irreparable injury is the single most

important factor towards the granting of preliminary injunctions, Prasad moved for a preliminary

injunction to enjoin Cache from selling its remaining jeans, claiming irreparable harm and

likelihood of success on the merits of its tenth claim for state law unfair competition for its

alleged trade dress.

Prasad's reasoning for making its motion exclusively based upon its tenth and last claim

is apparent by viewing its brief: it recognizes that it will be unable to prove that its purported

marks and trade dress have achieved secondary meaning in the marketplace and are therefore

worthy of protection.  Even were Prasad correct that it need not prove secondary meaning for

designs that are part of its product, it is still required to show (1) ownership of a valid mark, and

(2) proof of likelihood of confusion in order to prevail on that claim.  Because Prasad has failed

1

to establish (1) irreparable harm, (2) likelihood of success on the merits via a showing of

likelihood of confusion, and (3) that it does in fact own a valid and protectible trademark or trade

dress, its motion must be denied.

## I.    STANDARD GOVERNING PRELIMINARY INJUNCTION MOTIONS

A party seeking a preliminary injunction must show that it is likely to suffer irreparable

injury if the sought injunction is not granted and "'either (1) a likelihood of success on the merits

of its case or (2) sufficiently serious questions going to the merits to make them a fair ground for

litigation and a balance of hardships tipping decidedly in its favor.'" *Helios & Matheson N. Am.,*

*Inc. v. Vegasoft Oy*, 07 Civ. 3600, 2007 U.S. Dist. LEXIS 38206, at *6-7 (S.D.N.Y. May 24,

2007) (Crotty, J.) (quoting *Reuters Ltd. v. United Press Intern., Inc.*, 903 F.2d 904, 907 (2d Cir.

1990) (citing *Coca-Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 314-15 (2d Cir. 1982)).

A showing of irreparable injury is "'the single most important prerequisite for the issuance of

preliminary injunction.'" *Id.* (quoting *Bell & Howell: Mamiya Co. v. Masel Co. Corp.,* 719 F.2d

42, 45 (2d Cir. 1983)).  "An essential component of an 'irreparable' injury is that it is 'incapable

of being fully remedied by money damages.'" *Id.*

"A preliminary injunction is considered an 'extraordinary and drastic remedy,' so the

party seeking the injunction carries the burden of persuasion to demonstrate, 'by a clear

showing,' that the above two elements [irreparable harm and likelihood of success] are

satisfied." *Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400, 409-410 (S.D.N.Y. 2006)

(Crotty, J.) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  Here, Prasad seeks a

"mandatory injunction, i.e., an injunction that would 'alter the status quo by commanding some

positive act.' A mandatory injunction requires a 'clear' or 'substantial' showing of a likelihood

of success on the merits." *Christian v. Alloy, Inc.*, 03 Civ. 10258, 72 U.S.P.Q.2D (BNA) 1697,

2004 U.S. Dist. LEXIS 11150, at *6-7 (S.D.N.Y. June 17, 2004) (quoting *Jolly v. Coughlin*, 76

F.3d 468, 473 (2d Cir. 1996)). Prasad has failed to meet both the lesser (but rigorous)

preliminary injunction test as well as the more stringent mandatory injunction test, and its motion

to enjoin Cache from selling the remaining several hundred pairs of jeans must therefore be

denied.

## II.    PLAINTIFF'S DELAY NEGATES ITS ASSERTION OF IRREPARABLE HARM

"'Significant delay in applying for injunctive relief in a trademark case tends to neutralize

any presumption that infringement alone will cause irreparable harm pending trial, and such

delay alone may justify denial of a preliminary injunction for trademark infringement.'"

*Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir. 1985) (quoting *Citibank, N.A. v.*

*Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) ("Although a particular period of delay may not rise

to the level of laches and thereby bar a permanent injunction, it may still indicate an absence of

the kind of irreparable harm required to support a preliminary injunction.").

Cache has been selling its "Besom Pocket Stretch Jean" online and in its stores nationally

since September, 2006. (Feeney Decl. ¶ 3.) As such, even if true that Prasad did not receive

actual notice of Cache's jeans until after September, 2006, Prasad was on constructive notice for

many months of Cache's alleged trademark and trade dress infringement.[1] Prasad does admit

---

[1]    Yet another reason why Prasad is not likely to prevail on its claims are because they may
be barred by laches. "Laches is an equitable defense which bars injunctive relief where a
plaintiff unreasonably delays in commencing an action." *Tri-Star Pictures, Inc. v. Leisure Time
Prods., B.V.*, 17 F.3d 38, 44 (2d Cir. 1994). "Although proof of knowledge is usually required
for the defense of laches, a plaintiff can still be barred if 'the defendant's conduct has been open
and no adequate justification for ignorance is offered.'" *Toyota Jidosha Kabushiki Kaisha v.
Aliments Lexus, Inc.*, CV-02-0013, 2004 U.S. Dist. LEXIS 10729, at *17-18 (E.D.N.Y. June 14,
2004) (quoting *Chandon Champagne Corp. v. San Marino Wine Corp.*, 335 F.2d 531, 535 (2d
Cir. 1964)). "Where the question of laches is in issue, the plaintiff is chargeable with such
knowledge as he might have obtained upon inquiry, provided the facts already known to him
were such as to put upon a man of ordinary intelligence the duty of inquiry." *Johnston v.
Standard Mining Co.*, 148 U.S. 360, 370 (1893); *Polaroid Corp. v. Polarad Elec. Corp.*, 182 F.
Supp. 350, 355 (E.D.N.Y. 1960), *aff'd*, 287 F.2d 492 (2d Cir. 1961). Clearly, if the parties
*(Footnote continued on next page)*

that since at least as early as May 12, 2007, it knew that Cache was selling the Besom Pocket

Stretch Jean. (Prasad Decl. ¶ 7.) Prasad did not seek permission to make its instant motion for

preliminary relief until July 19, 2007, over two months after it claims that it first learned of

Cache's jeans, and over nine months after the jeans first hit the open market. (Duvdevani Decl.

Ex. A.) This Court offered the parties a date of July 26, 2007 to appear for a pre-motion

conference. (Duvdevani Decl. Ex. B.) While counsel for Cache agreed to that date, the earliest

offered by the Court, counsel for Prasad declined, and opted for the latest of the four dates

offered by the Court. (Duvdevani Decl. Ex. C.) Giving Prasad the benefit of the doubt that it

first actually learned of Cache's Besom Pocket Stretch Jean on May 12, 2007, Prasad delayed for

over two months before seeking permission to make a motion for a preliminary injunction, and

almost three months before appearing before the Court for a pre-motion conference. Such a

delay negates irreparable harm. *See, e.g.*, *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir.

1985) (no irreparable injury where plaintiff waited 10 weeks after learning of defendant's plans,

stating that "Citibank 's failure to act sooner undercuts the sense of urgency that ordinarily

accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable

injury."); *Magnet Communications, LLC v. Magnet Communications, Inc.*, 2001 U.S. Dist.

LEXIS 14460, No. 00 Civ. 5746, 2001 WL 1097865, at *1 (S.D.N.Y. Sept. 19, 2001) ("That

alone is a delay of twelve weeks, and such a delay tends to neutralize any presumption that

infringement alone will cause irreparable harm pending trial, and such delay alone may justify

---

*(Footnote continued from previous page)*
compete to the extent claimed by Prasad, and if there is any harm caused to Prasad by Cache's
alleged infringement or any likelihood of confusion between the two products, Prasad is
chargeable with the knowledge of the sale of Cache's jeans starting in September, 2006. Prasad
did not file this action until June, 2007, nearly nine months later, when Cache had almost
completed its sales of the Besom Pocket Stretch Jean.

denial of a preliminary injunction for trademark infringement." (citation omitted; internal quotations omitted); *Gidatex, S.R.L.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998) ("Courts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months."); *Century Time Ltd. v. Interchron Ltd.*, 729 F. Supp. 366, 369 (S.D.N.Y. 1990) (the plaintiff was unlikely to demonstrate irreparable harm because two months passed between the date that the plaintiff knew the action would not settle and the filing of a motion for preliminary injunction); *Comic Strip, Inc. v. Fox Television Stations, Inc.*, 710 F. Supp. 976 (S.D.N.Y. 1989) (3 month delay; seven months counting settlement discussions); *Le Cordon Bleu v. BPC Publishing Ltd.*, 327 F. Supp. 267 (S.D.N.Y. 1971) (13 week delay). If the Court were inclined to consider the date that Cache openly began to sell its jeans as the date the delay began, the delay is far lengthier than the delay in the cases cited above wherein irreparable harm was negated.

As such, even if Prasad established that the *Polaroid* factors weigh in its favor, which, as explained below, it has not, it is not entitled to a preliminary injunction because of its delay:

> But even if plaintiff had established that the Polaroid factors weighed strongly in his favor on the issue of likelihood of confusion, he would not be entitled to a preliminary injunction. A plaintiff in a trademark infringement case must be prepared to demonstrate that harm (i.e., confusion) is imminent, or the harm will not be deemed irreparable and no preliminary injunction will issue. *A significant delay in applying for injunctive relief after the alleged misuse of a registered mark begins 'tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of preliminary injunction for trademark infringement.'*

*Lapham v. Porach*, 06-Civ-6861, 2007 U.S. Dist. LEXIS 30751, at *29 (S.D.N.Y. Apr. 25, 2007) (emphasis added) (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)). Thus, for this reason alone, Prasad's motion must be denied.

III.    **THE FACT THAT CACHE HAS SOLD OVER 6900 PAIRS OF JEANS AND HAS LESS THAN 660 PAIRS LEFT FURTHER NEGATES IRREPARABLE HARM**

Cache began selling its Besom Pocket Stretch Jeans in September, 2006.  (Feeney Decl. ¶ 3.)  Since that point in time, Cache has sold over 6,900 pairs of the jeans.  (Feeney Decl. ¶ 4.)  As of August 15, 2007, Cache had in its inventory 651 pairs of  Besom Pocket Stretch Jeans.  (Feeney Decl. ¶ 4.)  Prasad is hard-pressed to argue that the sale of the remaining goods would cause the irreparable harm worthy of the drastic measure of a preliminary injunction.

IV.    **PLAINTIFF HAS UTTERLY FAILED TO DEMONSTRATE THAT ITS PURPORTED TRADE MARK AND TRADE DRESS ARE INDICATORS OF SOURCE, BUT ARE RATHER NOTHING MORE THAN ORNAMENTAL, AND THUS FUNCTIONAL, DESIGNS**

Throughout its complaint and moving papers, Prasad jumps to the conclusion that the design on a pocket of pair of its jeans is a trademark, and that jewels affixed to the back pocket and seams of those jeans constitute a trade dress.  A trademark is defined "as 'any word, name, symbol, or device, or any combination thereof" which is used or intended to be used by a person 'in commerce . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.'" *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 155-16 (2d Cir. 2006).  Prasad provides no credible support for its position that it will be able to prove that its design on an item of clothing is, in fact, an indicator of a source of goods.[2]  Recognizing this inability, Prasad attempts an end-run around established trademark case precedent and argues that its preliminary injunction is solely based upon its claims for purported trade dress, which is defined as "the total image of a good as defined by its overall composition and design, including size, shape, color,

---

[2]    Prasad's self-serving affidavit is not sufficient proof that its back-pocket design is meant to be a trademark, especially in light of the fact that it has never attempted to register the same, but has submitted applications for at least seven other marks. (*See* page 12; Duvdevani Decl. Ex. D).

texture, and graphics." *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 168 (2d Cir. 1991). However, just as in a trademark claim, "[t]o prevail on a trade dress claim, the plaintiff *must* demonstrate that the product's appearance has acquired 'secondary meaning' -- the consuming public immediately identifies the product with its maker -- and that purchasers are likely to confuse the imitating goods with the originals." *Id.* (emphasis added). Prasad essentially concedes that is has not presented any evidence of secondary meaning for its jeans (Prasad Br. at 9-10), leaving only one out of its ten claims to support its instant motion, its New York unfair competition claims for trade dress, which, according to Prasad, require no evidence of secondary meaning. An examination of the cases Prasad uses to support this contention, however, reveal that none are on point with the case at hand and do not actually support the granting of this motion. *See, e.g., Forschner Group, Inc. v. Arrow Trading Co., Inc.,* 124 F.3d 402 (2d Cir. 1997) (where trade dress was red handles on army knives, court structured narrow injunction wherein defendant allowed to use the phrase "Swiss Army knife" if it added its name to its designation of its knife with equal prominence; here, Cache already incorporates its own CACHE marks on the jeans); *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131 (2d Cir. 1994) (Court vacated preliminary injunction; trade dress at issue was comprised of product's packaging, not, like here, product itself); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162 (2d Cir. 1991) (Court denied summary judgment on trade dress unfair competition claims, stating that "[s]imilarity in overall appearance alone cannot establish source confusion as a matter of law."); *Harlequin Enterprises Ltd. v. Gulf & Western Corp.*, 644 F.2d 946 (2d Cir. 1981) (Trade dress comprised of covers of a romantic novels; Court's decision primarily based on the fact that the cover achieved secondary meaning and that evidence of actual confusion existed); *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 369

N.E.2d 1162 (1977) (case concerned trade name, not trade dress or trademark; court affirmed

denial of injunction due to lack of secondary meaning) (all cited by Prasad Br. at 9-10).

Regardless, Prasad also concedes that under New York state law, functionality is an

affirmative defense. (Prasad Br. at 19.)  The Second Circuit has embraced the doctrine of

"aesthetic functionality," and has held that the functionality doctrine applies "even to features of

a product that are purely ornamental." *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1006 (2d

Cir 1995).  "'[W]here an ornamental feature is claimed as a trademark and trademark protection

would significantly hinder competition by limiting the range of adequate alternative designs, the

aesthetic functionality doctrine denies such protection.'"  *Id.* (quoting *Wallace Int'l Silversmiths,*

*Inc. v. Godinger Silver Art Co.*, 916 F.2d 76, 81 (2d Cir. 1990), *cert. denied*, 499 U.S. 976, 113

L. Ed. 2d 720, 111 S. Ct. 1622 (1991).  Limiting Cache – and others in the market – from placing

jewels on its jean pockets and down the seams of its legs and the generic stitching found on the

jean pockets, would significantly hinder competition, and, accordingly, the aesthetic

functionality doctrine denies any protection.  Prasad's contention that alternative designs for

jeans exist does not negate this fact.

In *Stormy Clime, Ltd. v. Progroup, Inc.*, 809 F.2d 971 (2d Cir. 1987), the Second Circuit

vacated the grant of a preliminary injunction due to the District Court's incorrect analysis of the

functionality doctrine.  In *Stormy Clime*, the Court explained:

> On one end, unique arrangements of purely functional features constitute a
> functional design. On the other end, distinctive and arbitrary arrangements of
> predominantly ornamental features that do not hinder potential competitors from
> entering the same market with differently dressed versions of the product are non-
> functional and hence eligible for trade dress protection. In between, the case for
> protection weakens the more clearly the arrangement of allegedly distinctive
> features serves the purpose of the product (including maintenance of low cost),
> especially where the competitor copying such features has taken some significant
> steps to differentiate its product. *In this case, for example, ProGroup places its*
> *DUCKSTER trademark prominently on a label at the inside of the neck, a*

*traditional means of identifying the manufacturer of clothing. The trademark is also displayed on the zipper pull, on a hang-tag, and on the plastic bag in which the jacket is packaged.*

*Id.* at 977 (emphasis added).  As seen in Exhibit O to the Culver Declaration, the Cache name and trademark is prominently stitched on a label on the inside of the jeans.  Although not easily visible from the photocopy (but will be more visible to the Court at the Preliminary Injunction Hearing by examining the jeans themselves), Exhibit F to the Culver Declaration shows Cache's hang tag affixed to its jeans.  Further, once the Court has an opportunity to observe the jeans themselves, it will be evident that the front button prominently displays the CACHE word mark, and each of the five snaps affixed to the front pockets reads "Cache," not once, but twice.  Nowhere on the Cache jeans is there any mention of Prasad, and there is thus absolutely no indication that Cache is attempting to confuse consumers.  Thus, like in *Stormy Clime*, because of the aesthetic functionality of the designs on the Prasad jeans and the placement of the Cache marks on its own jeans, there are "substantial doubts" as to whether a preliminary injunction is appropriate.  *Id.* at 979 (also stating that "[s]ince trademark protection extends for an unlimited period, expansive trade dress protection for the design of products would prevent some functional products from enriching the public domain.  This threat is particularly great when, as in the instant case, a first manufacturer seeks broad trade dress protection for a product on the ground that its arrangement of predominantly functional features is distinctive.").  *See also, e.g., Nora Beverages v. Perrier Group of Am.,* 269 F.3d 114, 122 (2d Cir. 2001) ("Labels can be integral, if not dispositive factors in determining overall similarity of trade dress.") (emphasis added); *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.,* 292 F. Supp. 2d 535, 543 (S.D.N.Y. 2003) ("Courts must rigorously apply the non-functionality requirement to

avoid undermining the carefully circumscribed statutory regimes for the protection of useful and ornamental designs under federal patent and copyright law.") (internal quotation marks omitted).

In *Knitwaves*, the defendant contended that the designs on Knitwaves' sweaters were functional "in that their primary purpose is aesthetic -- to enhance the sweaters' ornamental appeal -- rather than to identify the sweaters as Knitwaves products." *Knitwaves,* 71 F.3d at 1006. The Court agreed that the primary purpose of Knitwaves' designs was aesthetic, and thus functional, but also explained that it was defendant's burden to prove functionality. *See id*. At this stage in the litigation, Cache has not had the opportunity to fully prove functionality. However, Prasad's own exhibits easily demonstrate the functionality of jean designs sufficiently to show that Cache would meet this burden. Exhibit M to the Culver Declaration are web pages from the website fashionsnoops.com, wherein dozens of back pockets of blue jeans are shown (Prasad's jeans are conspicuously absent from the site). The preface to the article states that the "back pocket serves *not only as a focal point on denim bottoms,* but also as a signal of superiority in the market. This report will identify key denim powerhouses, show what makes their *designs* stand out, and serve as a point of inspiration for the best pockets to come!" (Culver Decl. Ex. M at 1.) If this exhibit educates the Court at all, it explains that the primary purpose of denim pockets is aesthetic, the secondary purpose is as an indicator of origin, and that jeans "designs" are to be a point of inspiration for other designers.

This is in sync with the Third Restatement of Unfair Competition. Prasad cites to the Restatement (Prasad Br. at 6, 8), but ignores the following relevant comment:

> This Section is also applicable to the recognition of trademark rights in the distinctive design features of the goods themselves. As a practical matter, however, it is less common for consumers to recognize the design of a product or product feature as an indication of source. *Product designs are more likely to be seen merely as utilitarian or ornamental aspects of the goods*. In addition, the competitive interest in copying product designs is more substantial than in the

10

case of packaging, containers, labels, and related subject matter. *Product designs are therefore not ordinarily considered inherently distinctive and are thus normally protected only upon proof of secondary meaning.*

*Id.* Because the Prasad jean design is primarily aesthetic, and thus not protectible, all of Prasad's claims are likely to fail, *including* its state law unfair competition claims.

## V.    THE POLAROID FACTOR ANALYSIS FAVORS THE DEFENDANT

In order to demonstrate that it is likely to succeed on the merits of its unfair competition claim for trade dress, Prasad argues that the *Polaroid* factors support a finding of likelihood of confusion. As discussed above, Prasad has failed to demonstrate that the designs on its jeans amount to a valid trademark, a necessary precursor to winning a trademark dispute. *See, e.g., Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 477 (2d Cir. 1996) ("To prevail on a trademark infringement claim, a plaintiff must prove that "it has a valid mark entitled to protection, and [that] defendant's use of it is likely to cause confusion.") (quoting *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993)). As discussed below, Prasad also fails to demonstrate that the *Polaroid* factors tip in its favor, thereby failing to prove that Cache's jeans are likely to cause confusion.

A.    <u>Prasad's Alleged Marks Are Weak</u>

1.    <u>Trade Dress is *Not* Inherently Distinctive</u>

Prasad's purported marks are weak. "The strength of a mark refers to its ability to identify the source of the goods being sold under its aegis." *Brennan's, Inc. v. Brennan's Rest.*, L.L.C., 360 F.3d 125, 130 (2d Cir. 2004) (citing *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 269 F.3d 114, 123 (2d Cir. 2001)). "There are two components of a mark's strength: its inherent distinctiveness and the distinctiveness it has acquired in the marketplace." *Id.* at 130-31. In cases such as this one where an alleged mark is actually part of the product or is

an alleged trade dress, the Second Circuit has held that Judge Friendly's *Abercrombie* test is not

particularly useful:

> Not only does the classification of marks into 'generic,' 'descriptive,'
> 'suggestive,' or 'arbitrary or fanciful' make little sense when applied to product
> features, but it would have the unwelcome, and likely unintended, result of
> treating a class of product features as 'inherently distinctive,' and thus eligible for
> trade dress protection, even though they were never intended to serve a source-
> identifying function.

*Knitwaves*, 71 F.3d at 1008 (citing *Duraco Prods., Inc. v. Joy Plastic Enterprises, Ltd.*, 40 F.3d

1431, 1440-41 (3d Cir. 1994) ("Being constitutive of the product itself and thus having no such

dialectical relationship to the product, the product's configuration cannot be said to be

'suggestive' or 'descriptive' of the product, or 'arbitrary' or 'fanciful' in relation to it."). *See*

*also, e.g., Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 377-78 (2d Cir. 1997)

("[A]s we observed in *Knitwaves*, it does not 'make sense' to apply the *Abercrombie* test directly

to product design or configuration cases. . . . We agreed with the Third Circuit that, in contrast to

verbal marks, one cannot meaningfully ask whether a product's design features are generic or

otherwise descriptive of the product itself. . . "). "Instead, we simply asked whether the design

was likely to be understood as an indicator of the product's source." *Id.* (emphasis added); *see*

*also, e.g., Jack Schwartz Shoes v. Skechers U.S.A.*, 233 F. Supp. 2d 512, 2002 U.S. Dist. LEXIS

25699, at *58 (S.D.N.Y. Sep. 10, 2002) ("Because product design 'almost invariably serves

purposes other than source identification,' it is not inherently distinctive, and must acquire

distinctiveness by developing a 'secondary meaning.'").

In *Knitwaves*, the Second Circuit concluded that the autumnal pattern on the front of

Knitwaves' sweaters was not indicative of source, and, thus, did not warrant protection as trade

dress. Here, there is no evidence before the Court that Prasad's purported mark or trade dress,

comprised of rhinestones and two stitched lines, are indicative of source. This is particularly true

in light of the fact that Prasad has seven trademark applications, *none* of which are for the alleged marks at issue in this action.  (Duvdevani Decl. Ex. D.).[3]  This important factor therefore favors Cache.

### 2.    Prasad Cannot Show Acquired Distinctiveness

The Second Circuit has identified six factors to be applied in assessing the acquired distinctiveness/secondary meaning of a trade dress: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and, (6) length and exclusivity of the mark's use." *Centaur Communications, Ltd. v. A/ S/ M Communications, Inc.*, 830 F.2d 1217, 1222 (2d Cir. 1987); *see also George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1536 (2d Cir. 1992); *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 2002 WL 1477821, at *18 (S.D.N.Y. July 11, 2002).  Even if Prasad did not essentially concede lack of secondary meaning (Prasad Br. at 9-10), it is clear from the existing record that Prasad has not demonstrated that any of the factors above weigh in its favor.

Prasad's alleged mark/trade dress is clearly weak, and this factor accordingly favors Cache.

### 3.    Similarity of the Marks

Cache does not dispute that its Besom Pocket Stretch Jean and Prasad's jeans look similar.  However, as discussed above, this does not mean that the two parties are using the same marks or trade dress to sell their respective goods.  If anything, Cache's own marks are clearly

---

[3]    The one case cited by Prasad in support of the strength factor is *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867 (2d Cir. 1986), decided prior to *Knitwaves*.  In *Lois*, Levi's mark was registered and therefore incontestable, and, as seen by Exhibit N to the Culver Declaration, had been in use since 1936, 50 years before that case was filed.  *Lois* is thus obviously not on point with the case at hand, and more recent trade dress cases follow the test from *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 378 (2d Cir. 1997), discussed above.

affixed to its jeans. Thus, unless and until Prasad is able to prove that its jean design acts as an indicator of origin, which Cache submits it will not be able to do, this factor does not favor Prasad.

     B.    <u>The Parties' Respective Products Do Not Compete In The Marketplace</u>

Evaluation of the products' proximity in the marketplace requires assessment of "whether and to what extent the two products compete with each other and the nature of the products themselves and the structure of the relevant market." *Morningside Group Ltd. v. Morningside Capital Group, LLC*, 182 F.3d 133, 140 (2d Cir. 1999). The inquiry includes both market and geographic proximity. *Brennan's*, 360 F.3d at 134. Market proximity asks "whether the two products are in related areas of commerce" while geographic proximity looks to "geographic separation of the products." *Id*. Both elements seek to assess whether the respective products have an "overlapping client base that creates a potential for confusion." *Id*.

Prasad has presented no evidence of the relevant market structure or a factual analysis as to whether the products compete. The only facts before the Court are the following: Cache's jeans are sold at Cache stores or via Cache's website. (Compl. ¶¶ 15, 16.) Prasad's jeans are sold at high-end boutiques and in fashionable department stores. (Prasad Decl. ¶ 2.) Prior to hitting the sale racks, the retail price of Cache's Besom Pocket Stretch Jeans was $88.00. (Compl. ¶ 16.) The retail price of Prasad's jeans are over twice as expensive, and range between $200 and $340. (Prasad Decl. ¶ 2.) Thus, other than the fact that both products are denim jeans, there is no indication whatsoever that the parties' are competitive in the market, and the price differentiations as well as the locations of sale lend support to the argument that the products simply are not competitive, especially geographically. *See also* Feeney Decl. ¶ 2 ("Cache's main competitors are other specialty chains selling women's apparel at similar price points, such as Bebe, BCBG Max Azria, Benetton, and Banana Republic."). Prasad's statement that a

"consumer may mistakenly assume" that Prasad has "licensed its property" to Cache is wholly unsupported by the record and is somewhat of an illogical leap. This factor favors Cache.[4]

C.     Bridging the Gap

"Bridging the gap" refers to the "likelihood that the senior user will enter the junior user's market in the future, or that consumers will perceive the senior user as likely to do so." *Juicy Couture, Inc. v. L'Oreal USA, Inc.*, 04 CIV. 7203, 2006 U.S. Dist. LEXIS 20787, at *71 (S.D.N.Y. Apr. 19, 2006). Prasad has presented no evidence that it has any interest in entering Cache's market in the future, and considering that it has referred to Cache as "mass market with lower prices and quality" (Prasad Br. at 15), it is reasonably safe to assume that it has no desire to do so. This factor does not favor Prasad.

D.     There is No Evidence of Bad Faith

The inquiry into willfulness or bad faith "considers whether the defendant adopted its mark with the intention of capitalizing on the plaintiff's reputation and goodwill and on any confusion between his and the senior user's product." *Savin Corp. v. Savin Group*, 391 F.3d 439, 460 (2d Cir. 2004). There is no evidence in the record that demonstrates that Prasad *has* a reputation or any good will, and there is certainly no evidence that Cache placed stitching and rhinestones on its jeans with any intent to capitalize on the same.

This is not a case where a struggling defendant is selling counterfeit designer pocketbooks on a street corner, attempting to convince unassuming tourists that they are getting the bargain of the century. Through years of sales and advertising efforts, Cache has built itself into a successful retail company with its own strong reputation and trademarks. It has no interest

---

[4]     Again, Prasad's sole case support for the proximity factor is *Lois Sportswear*, wherein the Levis' mark at issue are famous, had long-standing use, and was decided over 20 years ago, when the denim jeans market was very different.

in usurping good will or reputation from Prasad or any other retailer or designer. (Feeney Decl. ¶ 5.) Because Prasad's jeans at issue do not contain any mark or trade dress other than the name "PRASAD," on the back pocket, which does not appear on Cache's jeans, Prasad will not be able to demonstrate bad faith, and this factor clearly favors Cache.

  E. <u>Cache Has Not Had The Opportunity to Examine the Quality of Prasad's Product</u>

  At this stage of this action, Cache has not yet had the opportunity to examine Prasad's products and is therefore unable to determine whether this factor favors the movant.

  F. <u>No Evidence of Actual Confusion</u>

  Prasad has submitted no evidence of actual confusion. While such evidence is not necessary for the grant of a preliminary injunction, it is notable that over 6,700 pairs of Cache's jeans have been sold since September, 2006 without Prasad coming forward with evidence of actual confusion. This lack of actual confusion is telling. *See, e.g., W.W.W. Pharmaceutical Co. v. Gillette Co.*, 808 F. Supp. 1013, 1024 (S.D.N.Y. 1992) ("Although actual confusion among potential customers may be difficult to document and is certainly not required for injunctive relief, the absence of evidence of actual confusion over a period of several years is 'a strong indicator that the likelihood of confusion is minimal.'") (quoting *Plus Products v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1006 (2d Cir. 1983) (no evidence of confusion for over a period during which substantial sales occurred is strong indicator that the likelihood of confusion is minimal)); *accord, Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 96 Civ.9469, 1999 U.S. Dist. LEXIS 4382, at *33 (S.D.N.Y. Apr. 7, 1999) ("Still, although lack of evidence of actual confusion is not dispositive of the factor of confusion, the absence of confusion to date is a strong indicator that the likelihood of confusion is minimal. Similarly, a plaintiff's failure to offer a survey showing the existence of confusion is evidence that the likelihood of confusion

cannot be shown.") (internal citations and quotation marks omitted).  This factor therefore favors Cache.

      G.    <u>Sophistication of Purchasers Favors Cache</u>

     "This factor examines the sophistication of the average consumer and the level of care they exercise when purchasing the products at issue." *Conopco, Inc. v. Cosmair, Inc.*, 49 F. Supp. 2d 242, 256 (S.D.N.Y. 1999).  Consumers of expensive products, like those who shop at high-end boutiques and department stores and who are willing to spend upwards of $340 (or even $88) on denim jeans tend to be sophisticated and discriminating customers.  *See, e.g., Star Indus. v. Bacardi & Co.,* 412 F.3d 373, 390 (2d Cir. 2005);  *Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 340 F. Supp. 2d 415, (S.D.N.Y. 2004), *rev'd on other grounds*, 454 F.3d 108, 155-16 (2d Cir. 2006); *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc.*, 440 F. Supp. 2d 249, 279 (S.D.N.Y. 2006); *Conopco, Inc. v. Cosmair, Inc.*, 49 F. Supp. 2d at 256-57 ("[P]urchasers of expensive perfumes from high-end department and specialty stores, who are often assisted by retail selling specialists and beauty advisors, are sophisticated and discriminating consumers. Other Courts faced with this question have reached the same result.") (internal citations omitted); *Edison Bros. Stores, Inc. v. Cosmair*, 651 F. Supp. 1547, 1551-52 (S.D.N.Y. 1987) (purchasers of expensive perfumes "are likely to devote a high degree of care and attention to their selection"); *Nina Ricci, S.A.R.L. v. Gemcraft Ltd.*, 612 F. Supp. 1520, 1529 (S.D.N.Y. 1985) ("Women who use expensive perfumes are sophisticated and discriminating consumers"); *P.F. Cosmetique, S.A. v. Minnetonka, Inc.*, 605 F. Supp. 662, 671 (S.D.N.Y. 1985) (same).  Because both Cache and Prasad have sophisticated customers, this factor favors Cache.

## VI.   **BALANCE OF HARDSHIPS FAVORS DEFENDANT**

     Prasad has not demonstrated the balance of hardships needed to justify a preliminary injunction.  In general, "the purpose of a preliminary injunction is to preserve the status quo . . .

." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 972 (2d Cir. 1989). If a preliminary injunction against Cache were granted, Cache would be required to locate all remaining pairs of the Besom Pocket Stretch Jean and pull them from the racks, causing unnecessary disruption to its business. In contrast, Prasad has not alleged any hardship from the denial of a preliminary injunction (besides the presumption of irreparable harm associated with a trademark infringement claim that is likely to be successful, which does not Cache submits does not apply here because Prasad is not likely to succeed on its claims). Moreover, any hardship Prasad asserts is disingenuous given the quantity of Besom Pocket Stretch Jeans that have already been purchased as compared to the amount remaining in Cache stores.

In short, plaintiff has not demonstrated the balance of hardships needed to justify a preliminary injunction.

## VII.    IF AN INJUNCTION IS GRANTED, PRASAD MUST POST A BOND

Federal Rule of Civil Procedure 65(c) requires that "[n]o restraining order or preliminary injunction <u>shall</u> issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." *Fed. R. Civ. P. 65(c)*. The clear language of the rule instructs that courts "shall" set a bond. This Court recognizes that Rule 65(c) requires that an applicant for a preliminary injunction provide a bond for security against the effects of a wrongly-issued injunction. *See, e.g., AB Electrolux v. Bermil Indus. Corp.*, 481 F. Supp. 2d 325, 336-37 (S.D.N.Y. 2007). And while the amount of the bond is within the Court's discretion, the Court must require a substantial bond in this matter because there can be no assurance of Prasad's ability to compensate Cache in the likely event that Prasad loses this case. Moreover, this is not a case like *AB Electrolux,* supra, wherein the defendant can

continue to sell its wares, just under another name, because Prasad claims that the goods *are* the mark.

## CONCLUSION

In light of the foregoing, Cache respectfully submits that Prasad's motion be denied in its entirety.

Dated: August 17, 2007

NIXON PEABODY LLP

By:      /s/ Tamar Duvdevani
         Frank W. Ryan (FR 0618)
         Tamar Y. Duvdevani (TD 7603)
         437 Madison Avenue
         New York, New York 10022
         (212) 940-3000
         (212) 940-3111 (fax)

         Attorneys for Defendant
         Cache, Inc.